SAMUEL E. GROSS

*v.*

MARY E. ARNOLD *et al.*

*Opinion filed February 17, 1899.*

1. CONTRACTS—*an offer to buy land may be revoked before acceptance.* A written proposal to buy land, signed and acknowledged and delivered to the agent of the owner of the land, to become operative upon acceptance of the terms by such owner, may be revoked at any time before acceptance.

2. BILLS AND NOTES—*when notes are not delivered so as to pass title.* Notes for the purchase price of land delivered to the agent of the owner, together with and as part of a written proposal to buy the land upon the owner's acceptance of the terms, are not delivered so as to pass title, where the offer is revoked before acceptance.

*Gross* v. *Arnold,* 77 Ill. App. 33, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

YOUNG, MAKEEL, BRADLEY & FRANK, for appellant.

STRONG, MILSTED & EHLE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The superior court of Cook county granted the prayer of a bill in chancery by appellees to cancel a judgment entered by confession on a note given by appellees to appellant, which contained a warrant of attorney to confess judgment thereon. The note, together with other notes, was on the fourth day of August, 1896, executed, and left with certain employees of the appellant, as part of a proposition on the part of the appellees to purchase two lots from appellant at the price of $3100. The superior court found, and the Appellate Court affirmed the finding, that the appellees withdrew the offer to purchase the lots before same was accepted. The determination of· this

question of fact is all that is necessary to the decision of the controversy. We think the chancellor and the Appellate Court entertained the correct view as to it.

The notes and writing mentioned constituted a proposal on the part of appellees to buy the lots at $3100, to be paid partly in cash, balance on proposed deferred payments. Appellant was not present and had instructed his employees to ask $3500 for the lots, and the notes and a writing in the nature of a proposition to buy the lots at $3100 were prepared for appellant and left with his employees in his office. McDonald, appellant's general superintendent of sales of lots, refused to accept the offer but held it for presentation to appellant. Whether one Sandford, another of appellant's agents, had power to accept proposals for the sale of lots need not be considered, for the reason we do not find in the record any proof that Sandford did accept the offer. On the contrary, Sandford drew the writing signed by the appellees to be presented to appellant, and which was to be signed by appellant if he decided to sell at the price offered. Sandford did not assume to sign the writing for appellant, but, as notary public, certified that appellees acknowledged the execution of the instrument before him. This writing was endorsed "approved" by appellant, but not until after the bill herein had been filed and while the cause was pending for hearing. The name of appellant by one "Moore, as his agent," appeared to this writing, but the record does not disclose when it was written there, nor is there any proof tending to show the appellant ever considered or acted on the offer, unless the fact he caused the judgment to be entered on the note should be considered as an act of acceptance.

As stated, the notes, and the writings which constituted the proposition to purchase the lots, were left with appellant's employees on the evening of the fourth day of August, 1896. We think it was satisfactorily proven the appellees, during the night of the fourth, decided to

abandon the proposed purchase of the lots, and that the agents of appellant were so notified at an early hour on the morning of the fifth. We think it very clear the proposition to purchase had not received the attention of appellant prior to the withdrawal of the proposal. It is not contended there is any proof tending to show it had been acted upon by the appellant. We attach but little weight to the contention the appellees did not, on the morning of the fifth, positively withdraw the offer, but only expressed an inclination to do so and left the matter open for another day. The better view of the testimony on the point is, appellees had reached a definite conclusion to abandon the proposed purchase, and that they so notified appellant's agents. The testimony of appellant's agents tends in some degree to show appellees agreed to consider the matter for another day, but we think the view of the evidence most favorable to be taken for the appellant is that appellees consented to his agents to consider for another day whether they would come to appellant's office and renew their offer. Appellant's agents visited appellees on the morning of the sixth and urged them to buy one of the lots if they were not willing to take both, but appellees, as we think the evidence shows, declined to proceed any further in the matter. We do not find in the proof anything to indicate appellant had been, even on the morning of the sixth, advised that the offer had been made for the property. The agent of appellant who testified as to the interviews with appellees on the fifth and sixth of August did not state appellant had or would accept the proposition, or even that he had been advised that the offer had been made.

It is familiar law an offer to enter into an agreement may be withdrawn at any time while it remains unaccepted. The proof here shows a proposal by the appellees and a withdrawal thereof before notification of acceptance. This *prima facie* establishes a contract was not completed. If the appellant in any binding way accepted

177—37

the proposal before it was revoked it devolved on him to prove such acceptance. We find no proof of that character in the record. It was shown Sandford endorsed the letters "O. K." on the application for the purchase of the lots; but that such endorsement was not on the paper on the evening of the 5th of August was very satisfactorily proven. It is true, appellees placed in the hands of the appellant's agent a written proposition to buy the lots, and also executed and placed in the hands of the same agent the notes to be given as specified in the written proposition, one of which notes was the note upon which the judgment sought to be canceled was entered; but the notes were not delivered absolutely as in fulfillment of a completed contract, but only as part of the proposal to buy the lots, the delivery to become operative only in the event the proposition should ripen into a contract. The placing of a note or other instrument in the hands of another, though the payee of the note, does not conclusively establish a delivery of the note or instrument, within the legal meaning of that word. Delivery is a question of intent, and depends on "whether the parties at the time meant it to be a delivery to take effect at once." *Jordan* v. *Davis*, 108 Ill. 336; *Wilson* v. *Wilson*, 158 id. 567.

The finding of the chancellor the appellees withdrew the offer to buy the lots before the appellant became bound to accept the offer is correct. Whether the chancellor erred in decreeing the appellant should return the sum of $10 paid his employees by appellees when the notes and application for the purchase of the lots were left with such employees is obviated by a *remittitur* of the amount entered, by appellees.

The decree of the superior court affirmed by the judgment of the Appellate Court is, except as to the amount remitted, affirmed.                     *Decree affirmed.*