(140 App. Div. 265.)

LINICK v. A. J. NUTTING & CO.

(Supreme Court, Appellate Division, Second Department.  October 20, 1910.)

1. PROPERTY (§ 12*)—TRANSFER OF TITLE—PERSONAL PROPERTY.
   Generally one can only part with title to personalty by his voluntary act or by conduct creating an estoppel.
   [Ed. Note.—For other cases, see Property, Dec. Dig. § 12.*]

2. BILLS AND NOTES (§ 378*)—BONA FIDE HOLDER—LIABILITY OF MAKER.
   One who voluntarily intrusts another with commercial paper, with a blank to be filled up with a stipulated amount by the latter, is liable to a bona fide holder, though the amount inserted is larger than agreed on.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. § 378.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BILLS AND NOTES (§ 378*)—BONA FIDE HOLDER—LIABILITY OF MAKER.

One who voluntarily intrusts another with commercial paper, with the place of payment blank to be filled up by the latter, is liable to an innocent holder for value, though a different place of payment than that agreed on is inserted.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. § 378.*]

4. BILLS AND NOTES (§ 378*)—BONA FIDE HOLDER—LIABILITY OF MAKER.

The rule that a bona fide holder of an incomplete instrument, negotiable but for some lack capable of being supplied, has implied authority to supply the omission, and to hold the maker thereon, applies only where the maker has by his own act, or by the act of another authorized or invested with apparent authority by him, put the instrument in circulation as negotiable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. § 378.*]

5. NEGLIGENCE (§ 1*)—"ACTIONABLE NEGLIGENCE."

"Actionable negligence" involves the existence of a duty, the omission to exercise ordinary care in connection therewith, and injury resulting in consequence thereof.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 148, 149; vol. 8, p. 7563.]

6. BANKS AND BANKING (§ 140*)—RELATION OF BANK TO DEPOSITOR.

A bank, by its contract with a depositor, must pay on his account, to the holder of checks bearing the depositor's genuine signature, the amount called for, provided such amount is to his credit.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 380–397; Dec. Dig. § 140.*]

7. BILLS AND NOTES (§ 382*)—SIGNING CHECKS IN BLANK—LIABILITY.

The signer of a blank check does not owe to a third person, who is not bound to honor the check when completed, the duty of guarding against the possibility of the check being stolen and completed and negotiated by the thief, and he is not liable to a third person on a blank check stolen and completed by the thief.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 955; Dec. Dig. § 382.*]

8. BILLS AND NOTES (§ 382*)—UNCOMPLETED INSTRUMENTS—LIABILITY OF MAKER.

Negotiable Instruments Law (Consol. Laws, c. 38) § 35, providing that, where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed, must be read in connection with section 34, declaring that where an incomplete instrument has not been delivered it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery, and when so read the delivery of a note by the maker is necessary to the inception of the contract, and the possession of such a note by the payee or indorsee is prima facie evidence of delivery; but where the note has never been actually delivered, and, without any confidence, or negligence, or fault of the maker, but by force or fraud, it has been put in circulation, there can be no recovery on it, even in the hands of an innocent holder.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 955; Dec. Dig. § 382.*]

Woodward and Carr, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Brooklyn, Seventh District.

Action by Louis Linick against A. J. Nutting & Co. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, BURR, THOMAS, and CARR, JJ.

Solomon S. Schwartz, for appellant.
Edward L. Collier, for respondent.

BURR, J. On July 20, 1909, plaintiff signed his name to a blank check. Thereafter David Ryckoff and Benjamin Silberman stole the check, filled in the name of F. A. Mann as payee and the sum of $147.87 as the amount thereof, and presented it to the State Bank, where plaintiff kept his account, and procured it to be certified. Thereafter they indorsed said check with the name of F. A. Mann and passed it to defendant for value, who collected the amount thereof from the said bank. Plaintiff, having taken up said check from the bank, now sues defendant as for money had and received for the amount of the check.

The question submitted, and which we are called upon to decide, is whether defendant obtained any title to the check which, as against the plaintiff, was a valid obligation for $147.87. As a general rule, one can only part with title to personal property by his voluntary act or by conduct sufficient to create an estoppel. In the case of commercial paper it was long ago held that, when by voluntary act a party intrusts another with such paper with a blank thereon designed to be filled up with a stipulated amount, such party is liable to a bona fide holder of the instrument, although the amount inserted was larger than that agreed upon. So, if the place of payment is left blank when the maker delivers it, the insertion of a different place of payment than that agreed upon will not avoid such paper in the hands of an innocent holder for value. See Van Duzer v. Howe, 21 N. Y. 531; Redlich v. Doll, 54 N. Y. 234, 13 Am. Rep. 573. The authorities are not harmonious as to the basis of this liability. Some deem that it rests upon an implied authority conferred by the maker upon the person to whom it was delivered to fill in the blanks, and others upon estoppel by reason of negligence. Nat. Exchange Bank v. Lester, 194 N. Y. 461–465, 87 N. E. 779, 21 L. R. A. (N. S.) 402. Upon neither of these grounds can the plaintiff be charged in this case. Certainly not upon the ground of implied authority, for that doctrine grows out of the relation of principal and agent, and there is no such relation between a thief and his victim. There is a vast difference in the rule of liability upon negotiable instruments between a case where the possession has been parted with by the affirmative act of the maker in an incomplete state, and one where his parting with such possession is the result of a crime. The rule that the bona fide holder of an incomplete instrument, negotiable but for some lack capable of being supplied, has an implied authority to supply the omission, and to hold the maker thereon, only applies where the latter has by his own act, or the act of an-

other, authorized, confided in, or invested with apparent authority by him, put the instrument in circulation as negotiable paper. Ledwich v. McKim, 53 N. Y. 307; Davis Sewing Machine Co. v. Best, 105 N. Y. 59, 67, 11 N. E. 146.

None of the circumstances connected with the theft of this paper appear, except that it was stolen, and that the persons guilty of the crime have been tried, convicted, and sentenced for the same. Plaintiff, therefore, cannot be charged with negligence giving rise to an estoppel, unless a man is guilty of negligence in writing his name upon a piece of paper which by some possibility may afterwards be stolen from him, which paper afterwards comes into the hands of a third person who is an entire stranger to the transaction, with words written over the signature which are sufficient in form to make it a check or note. Actionable negligence involves, first, the existence of a duty; second, the omission to exercise ordinary and reasonable care in connection therewith; and, third, injury resulting in consequence thereof. In view of the contractual relation existing between the bank and its depositor, some duty of care may be owing to it. The bank, by the terms of its contract with him, is bound to pay on his account to the holder of paper bearing his genuine signature the amount called for, if such amount is to his credit. But a third person is under no obligation to honor his paper. He can take it or not as he pleases, and as a rule such paper is accepted in reliance upon the immediate transferrer thereof. Trust Co. of America v. Conklin, 65 Misc. Rep. 1, 119 N. Y. Supp. 367. What duty, therefore, is owing to him? Again, at the risk of being charged with lack of ordinary care and prudence, must one guard against the possibility of a crime being committed? It has been held that where the maker of a completed negotiable instrument has parted with its possession, but it is in such form that it is possible to make alterations in it, he is not guilty of negligence in thus delivering it, for the reason that he is not bound to assume that the person to whom he delivers it will be likely to commit a crime because it is apparently easy to do so. Nat. Exchange Bank v. Lester, supra. The drawer of a check is not bound so to prepare it that nobody else can successfully tamper with it. Critten v. Chemical Nat. Bank, 171 N. Y. 219, 224, 63 N. E. 969, 57 L. R. A. 529. Much less can a party be held liable for negligence because it is possible that he may be deprived of the possession of an incomplete negotiable instrument by a crime. He is not bound to anticipate nor guard against such an act.

No case has been cited holding a maker liable under such circumstances. We have found two well-considered cases to the contrary. Burson v. Huntington, 21 Mich. 416, 4 Am. Rep. 497; Baxendale v. Bennett, L. R. 3 Q. B. Div. 525. In the Burson Case the note was taken by the payee named therein from a table in the room of the maker, without his authority or consent, and transferred to an innocent holder for value. Judge Christiancy says, in an opinion concurred in by the entire court (the italics are ours):

"When a note payable to bearer, *which has once become operative by delivery*, has been lost or stolen from the owner, and has subsequently come to the hands of a bona fide holder for value, the latter may recover against the maker, and all indorsers on the paper when in the hands of the loser;

and the loser must sustain the loss. In such a case there was a complete legal instrument; the maker is clearly liable to pay it to some one; and the question is only to whom. But in the case before us, *where the note had never been delivered, and therefore had no legal inception or existence as a note*, the question is whether he is liable to pay at all, even to an innocent holder for value. The wrongful act of a thief or a trespasser may deprive the holder of his property in a note which has once become a note, or property, by delivery, and may transfer the title to an innocent purchaser for value. But a note in the hands of the maker before delivery is not property, nor the subject of ownership, as such. It is, in law, but a blank piece of paper. Can the theft or wrongful seizure of this paper create a valid contract on the part of the maker against his will, where none existed before? There is no principle of the law of contracts upon which this can be done, unless the facts of the case are such that, in justice and fairness, as between the maker and the innocent holder, the maker ought to be estopped to deny the making and delivery of the note. * * * There may be cases where the culpable negligence or recklessness of the maker in allowing an undelivered note to get into circulation might justly estop him from setting up nondelivery, as if he were knowingly to throw it into the street, or otherwise leave it accessible to the public, with no person present to guard against its abduction under circumstances when he might reasonably apprehend that it would be likely to be taken. * * * The evidence tends to show that, when he left the room in his own house, the note being on the table, and his sister remaining there, he did not confide it to the custody of the payee, but told him not to take it, and no final agreement between them had yet been made, and no consideration given. Under such circumstances he can no more be said to have trusted it to the payee's custody or confidence than that he trusted his spoons or other household goods to his custody or confidence; and there was no more apparent reason to suppose he would take and carry off the one than the other. The maker, therefore, cannot be held responsible for any negligence; there was nothing to prove negligence, unless he was bound to suspect, and treat as a knave, a thief, or a criminal, the man who came to his house apparently on business, because he afterwards proved himself to be such. This, we think, would be preposterous. We therefore see no ground upon which the defendant could be held liable on a note thus obtained, even to a bona fide holder for value."

In the case of Baxendale v. Bennett, supra, decided by the English Court of Appeal, the defendant, at the request of one Holmes, had written his name for Holmes' accommodation as an acceptor upon a paper which was blank, except that it had an impressed bill stamp upon it, and had given it to Holmes with authority to fill it up and sign it as drawer. Afterwards Holmes, discovering that he did not need the accommodation, returned the paper to defendant in the same state in which he received it. It was stolen from defendant's desk, filled up, and signed by one Cartwright as drawer, indorsed by him, and subsequently transferred to plaintiff as a bona fide holder for value. The court (Bramwell, L. J.) held that the defendant was not liable. In his opinion he says:

"Suppose he had signed a blank check, with no payee, or date, or amount, and it was stolen; would he be liable or accountable, not merely to his banker the drawee, but to a holder? * * * I cannot think so. But what about the authorities? It must be admitted that the cases of Young v. Grote, 4 Bing. 253, and Ingham v. Primrose, 7 C. B. (N. S.) 82, go a long way to justify this judgment; but in all those cases, and in all the others where the alleged maker or acceptor has been held liable, he has voluntarily parted with the instrument. It had not been got from him by the commission of a crime. This, undoubtedly, is a distinction, and a real distinction. The defendant here has not voluntarily put into any one's hands the means, or part of the means, for

committing a crime. But it is said that he has done so through negligence. I confess I think he has been negligent; that is to say, I think, if he had had this paper from a third person, as a bailee bound to keep it with ordinary care, he would not have done so. But then this negligence is not the proximate or effective cause of the fraud. A crime was necessary for its completion. Then Bank of Ireland v. Evans' Trustees, 5 H. L. C. 389, shows under such circumstances there is no estoppel."

This rule of law has now passed into the statute in these words:

"Where an incomplete instrument has not been delivered, it will not, if completed and negotiated, without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery." Negotiable Instruments Law (Consol. Laws, c. 38) § 34.

The provision of the subsequent section of the same act, to the effect that, "where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed," must be read in connection with said section 34, and this provision does not apply in the case of an incomplete instrument, completed and negotiated without authority. Crawford's Negotiable Instruments, § 25, note.

We conclude, therefore, that the delivery of a promissory note by the maker is necessary to a valid inception of the contract. The possession of such a note by the payee or indorsee is prima facie evidence of delivery; but if it appear that the note has never been actually delivered, and that without any confidence, or negligence, or fault of the maker, but by force or fraud, it was put in circulation, there can be no recovery upon it, even when in the hands of an innocent holder.

Defendant contends that, as against the plaintiff, the bank was justified in paying out the plaintiff's money on the check, and cites in support of his contention, Trust Co. of America v. Conklin, supra. If so, it was not because the check was a valid check in the hands of a third person, but because of the peculiar contract relation between the bank and its depositor. We are not called upon to decide this, since it seems to be conceded that, if the check was not a valid obligation in the hands of the defendant, this action will lie as for money had and received.

The judgment appealed from must be reversed, and a new trial ordered; costs to abide the event.

JENKS and THOMAS, JJ., concur.

WOODWARD, J. (dissenting). From the conceded facts, it appears that the plaintiff signed a check, leaving the amount and the name of the payee blank. The instrument was stolen from his place of business by two persons, who filled in the amount, inserted the name of a fictitious payee, procured the same to be certified by the bank on which it was drawn, and transferred the check to the defendant, who parted with the full apparent face value, partly in merchandise and partly in cash. The defense interposed was that the plaintiff was negligent in leaving the incomplete instrument where it could be stolen, and a fraud thereby perpetrated upon the defendant.

Section 34 of the negotiable instruments law (Consol. Laws, c. 38) provides:

"Where an incomplete instrument *has not been delivered,* it will not, if completed and negotiated, without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery."

Section 35 of the same statute provides:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party *other than a holder in due course,* the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. *But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed.* And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

"Delivery," as defined by section 2 of the negotiable instruments law, "means transfer of possession, actual or *constructive,* from one person to another." By section 35, the delivery, to be effectual, must, as regards a remote party *other than a holder in due course,* be made either by or under the authority of the person making, drawing, accepting, or indorsing the instrument; and when the instrument is in the hands of a holder in due course a valid delivery is *conclusively presumed.* The check in question was not delivered "by or under the authority of" the maker; but, as to a holder in due course, that, it would seem, is not requisite. In the hands of such a party, a valid delivery is conclusively presumed. The defendant was a holder in due course. Neg. Inst. Law, § 91. It follows that section 34 is not applicable, for that section presupposes that there has been no delivery.

I therefore vote to affirm the judgment.

CARR, J., concurs.