## AMERICAN EXPRESS CO. et al. v. CITY NAT. BANK OF GALVESTON.
### (No. 9153.)

Court of Civil Appeals of Texas. Galveston.
May 17, 1928.

Motions of City National Bank and Varnell for Rehearing Denied June 14, 1928.

1. Bills and notes ⬅➡382—Express company would not be liable to good-faith purchaser for value on blank travelers' checks stolen from agent before delivery (Negotiable Instruments Act [Rev. St. 1925, art. 5932, §§ 1, 8, 14, 15, art. 5934, § 30, and art. 5935, § 52]).

If blank travelers' checks in possession of bank as agent for issuing express company were stolen during robbery before they had ever been delivered and without required signature of actual purchaser from agent executed at the time, express company would not be liable thereon, even to subsequent good-faith purchaser for value under Negotiable Instruments Act (Rev. St. 1925, art. 5935, § 52, article 5932, §§ 1, 8, 14, 15, and article 5934, § 30, in absence of negligence of express company or bank as its agent since checks were never complete and regular on their face.

2. Bills and notes ⬅➡382—Express company held entitled to set up defense against good-faith purchaser that blank travelers' checks stolen from agent were forged; "forgery" (Pen. Code 1925, art. 979; Negotiable Instruments Act [Rev. St. 1925, art. 5932]).

If blank travelers' checks in possession of bank as agent for issuing express company were stolen during robbery before they had ever been delivered and without required signature of actual purchaser from agent, executed at time, express company could set up defense that instruments were forgeries within Pen. Code 1925, art. 979; Negotiable Instruments Act (Rev. St. 1925, art. 5932), even as against subsequent good-faith purchaser for value, regardless of whether the same or different persons falsely signed alleged purchaser's name in both places on each instrument; "forgery" being the making of a false instrument with intent to defraud.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

Lane, J., dissenting.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

---

Action by the City National Bank of Galveston against the American Express Company and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Louis J. Dibrell, of Galveston, for appellant Varnell.

Armstrong & Cranford, of Galveston, for appellant American Express Co.

H. E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for appellee.

GRAVES, J. The statement we make of the cause is an adaption from recitations in the several briefs of the parties, without acknowledgment of what in most instances is a substantial quotation:

This is a suit by City National Bank against American Express Company and Joe Varnell on a number of "travelers' checks," alleged to be negotiable instruments within the meaning of the Negotiable Instruments Act, title 98, Revised Statutes of Texas. The Express Company was sued as drawer, drawee, and acceptor, Joe Varnell as warrantor of the title and validity thereof under section 65 of the act; it being alleged that he negotiated the checks to the bank by delivery and without indorsing them. The following copy of the body of one of the checks shows the form they were in when offered in evidence:

"U. S. Dollar Travelers' Cheque, when countersigned below with this signature: W. L. Hines.

"A3,035,440

"Three Cipher Three Five Four Cipher

"Jun 11, 1923.

"American Express Company at Its Paying Agencies:

"Pay this cheque from our balance to the order of City National Bank, Galveston, Tex. $10.00. In United States ten dollars. In all other countries at current buying rate.

"For bankers' cheques on New York.

"Jas. F. Fargo, Treasurer.

"Countersign here is presence of person cashing. W. L. Hines.

"This cheque is redeemable only at the company's offices and bankers in United States."

Other data on the checks showed the principal offices of the company abroad. On the margin is this:

"Guard your travelers' cheques as you would money. When cashing fill out cheque completely and countersign."

Varnell answered the petition of the bank as follows:

"Comes defendant, Joe Varnell, and admits and adopts the allegations in plaintiff's petition, and prays that he have judgment over against the defendant, American Express Company."

Defendant further alleges that he paid face value for the checks without notice of any defenses thereto.

The express company answered by way of general denial, and then for special answer alleged in substance:

First. That the plaintiff bank did not acquire any title to the checks, and had no title to the same auhorizing it to maintain a suit upon the same because the checks were in form negotiable instruments payable to order within the meaning of Vernon's Ann. Civ. St. Supp. 1922, article 6001—8 and article 6001—9, defining negotiable instruments payable to order and negotiable instruments payable to bearer, and such instruments were not negotiated to the plaintiff by indorsement, as is required by article 6001—30 for the transfer of negotiable instruments payable to order so as to pass title thereto.

Second. That the plaintiff bank is not entitled to and ought not to recover against defendant express company because the bank is not a holder in due course of these checks, because, at the time of the alleged cashing of the same, if such cashing in law amounts to a transfer of the same to plaintiff, so as to vest the plaintiff with title to the same, the checks were not complete and regular upon their face, as required by article 6001—52, in that there was no payee named in the checks in the blank space for the name of the payee, and because the instruments were in form payable to order, and were and have not been transferred to plaintiff by indorsement; and that the defendant has good and valid defenses to the suit upon the checks, and is not liable thereon, for the reason that the same were stolen from the First National Bank of Barnsdall, Okl., on the 9th day of May, 1923, by bank robbers in an incomplete and blank form, and had been filled up, completed, and delivered without authority of the express company, and that they never became, and are not, valid obligations of the defendant express company, and that they were stolen in an incomplete form and are forgeries, and are wholly without consideration, and that the plaintiff bank is not a holder of such instruments in due course for the reasons aforesaid, and did not acquire the checks from a bona fide holder in due course, for that the defendant Varnell received these checks in consideration for the illegal sale and delivery by Varnell to one Frank Nash. alias W. L. Hines, of whisky in violation of law.

Third. That the defendant express company is not liable on the checks because the same did not constitute valid obligations against it, for the reason that the same had been placed with the First National Bank of Barnsdall, Okl., as its agent, in an incompleted form, with only the printed facsimile signature of the defendant's treasurer appended thereto, and the checks were nothing more than incomplete blank forms, and had been placed in such form with the bank with the understanding between the bank and the defendant express company that the bank was

to hold the checks as this defendant's agent and trustee, and was only to complete and deliver same, or any of them, for this defendant, upon a sale of the same to a purchaser making written application therefor, and upon the purchaser signing his name in the blank space therefor on the incomplete and blank travelers' checks; and, while the checks were in the possession of the First National Bank of Barnsdall, Okl., in such incomplete and blank form, and under the arrangement aforesaid, the same were taken forcibly from the bank by robbers on May 9, 1923, and, after having been so taken by force and without the consent of the defendant American Express Company, and without any consideration having passed therefor, were completed without authority of this defendant by filling in the aforesaid blank spaces, and that, if the same were negotiated to the plaintiff bank, they were negotiated without the authority of this defendant, and are not valid contracts as against the defendant express company, by virtue of the provision of article 6001—15 of Vernon's Ann. Civ. St. Supp. 1922 of Texas.

There were further averments to the effect that: (1) Upon presentment of the checks to it for payment, the express company advised the bank it was not liable thereon because of the facts just alleged, and that, after having been so advised, the latter had negligently and willfully failed to collect the amount it was out on the checks from defendant Varnell, although at various times since such notification was given to it Varnell had had sufficient deposits with the bank to cover the same; (2) the express company, in event it should be held liable on the checks to the bank, should have judgment over against Varnell because the checks were invalid in his hands as having been the consideration for an illegal sale of whisky on his part to Nash, alias W. L. Hines, etc.

The plaintiff bank filed a supplemental petition alleging that, by reason of the facts alleged in plaintiff's original petition, the defendant is estopped from denying the validity of the instruments sued on, and is estopped from denying that they were completed instruments, and the defendant Joe Varnell for his part adopted this supplemental petition of the bank.

The chief evidence the trial court admitted was, in substance: The bank introduced the checks in evidence, and proved by Varnell that he delivered the checks to the bank and received from appellee $2,000, the face value of the checks. Varnell also deposed that he acquired the checks from a man introduced as W. L. Hines, paid him $2,000 cash therefor, and that such man countersigned the checks "W. L. Hines" in his presence at the time he acquired them. Varnell said further that Hines spent some three weeks in Galveston, and, while here, he cashed other American Express Company checks for him, and that the others were all right.

The defendant express company offered to prove:

That these checks were stolen on May 9, 1923, from the First National Bank of Barnsdall, Okl., by bank robbers, and that at that time the checks were in the possession of the bank among other checks in an incompleted form, that is to say, without being dated, and without having any name or signature in either the upper or lower left-hand corners, nor the name of the payee, where blanks were left for the purpose, and that these blank forms had been deposited with the First National Bank of Barnsdall, Okl., as trustee, and that, at the time of depositing the same with the bank, the bank by its cashier executed a trust receipt therefor in the following form (omitting a description of the checks):

"Received in trust from the American Express Company travelers' cheques of the American Express Company as follows: [Description of checks.]

"The undersigned hereby accepts responsibility for the safe-keeping of said cheques and the due issue thereof, and agrees to account to the American Express Company therefor and for the proceeds received from the sale thereof. The said cheques until sold and the proceeds thereof when sold shall at all times remain the property of the American Express Company.

"The First National Bank, Barnsdall, Okl.,
                    "H. O. McSpadden, Cashier."

That such checks, after having been so stolen by the robbers who took them from the bank, were delivered to W. L. Hines, alias Frank Nash, the party from whom the defendant Varnell received them, and that the same had been filled up and completed and negotiated without any authority and without consideration having been received therefor by the defendant Express Company, all of which evidence the court excluded upon the objection of the plaintiff bank and the defendant Varnell, upon the grounds that the checks had come into the hands of an innocent purchaser, and the defendant express company could not show facts as a defense.

It did appear, however, from the evidence which was admitted by the court, that the agents of the express company, before putting such checks in circulation, required the purchaser to sign his name in the upper left-hand corner, for the reason that that is the identifying feature of the travelers' checks, and that the express company required of the agents that issued such checks for them that they see to it that the purchaser should sign his name at the time of the issue of the checks in that place. There was also evidence submitted tending to show that Varnell had received these checks in payment for whisky, which he had sold Hines, alias Frank Nash, and that Varnell, according to the custom of

the trade, had accompanied the truckload of whisky across the Causeway.

The court gave judgment in the bank's favor against both Varnell and the express company, with provision that, should such judgment be made out of the latter, it should have a like recovery over against Varnell.

On the appeal, the express company complains of the bank's judgment against it, while Varnell only assails the express company's recovery over against him, assigning no errors as against the bank.

[1] We think the trial court erred in excluding the testimony proffered by the express company, in that, if true, it would have constituted a complete defense for that appellant against the bank's suit; it would thus have been shown that these sued upon instruments, by the very initial requirement of the Negotiable Instruments Act (section 52 of R. S. 1925, article 5935) were so inchoate when they left the hands of the express company's agent, the Oklahoma bank, as not only not to be "complete and regular on their face," but to constitute merely waste paper—in other words, that they then lacked what the undisputed evidence that was received showed was their identifying feature before they could be put into circulation as an obligation of the express company, the signature of an actual purchaser thereof from an agent of the company, executed at the time and placed on the blank at the upper left-hand corner of the instrument. In such circumstances, therefore, the bank could not have been the holder of a negotiable instrument at all; hence there was nothing to which the other incidents of the statute might attach, despite the fact that it was in perfect good faith about the matter, and paid face value in cash. Cherbonnier v. Bank (Tex. Civ. App.) 199 S. W. 307; Commercial Security Co. v. Hull (Tex. Civ. App.) 212 S. W. 986; 8 Corpus Juris, p. 208, § 338; Gross v. Arnold, 177 Ill. 575, 52 N. E. 867; Linick v. Nutting, 140 App. Div. 265, 125 N. Y. S. 93; Purviance v. Jones, 120 Ind. 162, 21 N. E. 1099, 16 Am. St. Rep. 319; Revised Statutes 1925, art. 5932, §§ 1, 8, 14, and 15; Revised Statutes 1925, art. 5934, § 30; 3 Ruling Case Law, p. 1025, § 233; Sabine v. Paine, 166 App. Div. 9, 151 N. Y. S. 735; Seay v. Bank of Tennessee, 3 Sneed (Tenn.) 558, 67 Am. Dec. 579; Tower-v. Stanley, 220 Mass. 429, 107 N. E. 1010.

It must not be overlooked that there was entirely lacking here, under either pleading or proof, any element of negligence upon the part of the express company, or of its agent, the Oklahoma Bank—no suggestion of such a thing appearing—merely the unmet, albeit at the same time unreceived, offer to prove the intervention of a superior force, identical in practical effect with what is often denominated "the act of God or the public enemy," and that on that account alone these declared upon papers were, without its knowledge, consent, or any quid pro quo to it, purloined from the custody of appellant express company's agent or trustee, and fraudulently foisted upon an unsuspecting public, of which the appellee bank happened to be a member. That being true, and the documents being incomplete upon their face in the indispensable particulars referred to, the express company was not estopped to deny their validity in the hands of any holder. 3 Ruling Case Law, § 233; Linick v. Nutting, supra.

Herein, we think, lies the distinction between the line of authorities here applied and those cited as being contra by the appellee, most, if not all, of which have to do with negotiable instruments that had been allowed to get into circulation by some negligence of the maker himself or of some one whose acts in that regard were referable to him.

[2] Furthermore, we think the facts alleged in that respect, if the opportunity had been afforded and the proof of them made, would have shown these papers to be forgeries within the meaning of our Penal Code 1925 (article 979), and on that account also wholly unenforceable in the bank's hands against the express company; there being nothing precluding it from setting up that defense. Section 23 of the Negotiable Instruments Act (R. S. 1925, article 5932). The essence of forgery seems to be the making of a false instrument with the intent to defraud, and, under the averments and tendered proof, that was done here in the fabrication of the signature of a real purchaser of these instruments through the placing by some other person of the name "W. L. Hines" thereon; since neither "W. L. Hines" nor Frank Nash, nor any other person, was such a purchaser of them, the instruments were all false ones, whether or not "Hines" and Nash were merely two names for the same person, or those of different persons. Neither would the fact that the same person may have signed the name "W. L. Hines" in both places upon each instrument lead to any different effect—in either instance the signature actually made was palmed off for that of another party; that is, a purchaser of the paper, for the fraudulent purpose of converting blank forms into negotiable instruments. Hocker v. State, 34 Tex. Cr. R. 359, 30 S. W. 783, 53 Am. St. Rep. 716; Commonwealth v. Costello, 120 Mass. 370.

Since these conclusions determine the merits of the appeal, further discussion is forborne as being unnecessary; under them neither other litigant could recover against the express company, wherefore the bank's judgment against it, as well as its own over against Varnell, must be reversed, and the cause remanded for another trial in respect thereto. The appellee's judgment against Varnell, not having been appealed from, is not before us. It has been so ordered.

LANE, J., dissents, and will file an individual opinion.

Reversed and remanded.

LANE, J. (dissenting). I feel constrained to enter my dissent from the action of the majority in reversing the judgment of the trial court.

In presenting my reasons for dissenting, I shall first discuss the question as to whether the instruments involved are negotiable, and, second, as to whether the bank obtained them in due course.

The instruments which came into the possession of the bank came into its possession as an innocent purchaser for value. I think it clearly apparent that the express company intended that the instruments should be sold and delivered to purchasers by its trustee, and become negotiable paper in the hands of all persons who might become bona fide purchasers thereof after the signature of the purported purchaser is placed in the upper and lower left-hand corners thereof. They were prepared by the express company, and signed by its authorized agent, J. F. Fargo, its treasurer. After such preparation, and after being properly signed by the treasurer, the papers involved in this suit and many others of like kind were placed with the Oklahoma bank for sale. While these papers were in the possession of said Oklahoma bank, said bank was robbed, and the papers involved were taken by the robbers, one of whom was the party who placed his name in the top and lower left-hand corners of the papers. By reason of the signature of the robber, the papers contained all the elements of negotiable paper. It is apparent, I think, that, since it is generally known that banks are often robbed, and money and valuable papers in their possession taken, it was negligence on the part of the express company to so execute the papers as it did, making it both possible and probable that just such a transaction as did occur would reasonably occur, and thereby cause loss and damage to any person who might purchase such paper.

"It is a general and just rule that, when a loss has happened which must fall on one of two innocent persons, it shall be borne by him who is the occasion of the loss, even without any positive fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the misfortune." 3 R. C. L. p. 999, § 209.

Knowing that the travelers' checks prepared by it with the signature of its treasurer affixed thereto might in some unlawful manner fall into the hands of some third person, the express company was careless in having them so signed and in such shape as to enable such third person to defraud those who might become the purchasers of the checks in good faith and for value. Had the signature of the agent of the express company been affixed to the checks only after a sale thereof was made to a purchaser, no such misfortune as did happen could have occurred. Suppose some one should sign his name to all the checks in his bank book and then carry them in his pocket, and then suppose some one were to rob him of these signed checks, fill out the blanks, and cash them at the bank, could it be reasonably said that his carelessness was not the proximate cause of the loss to the bank?

In 3 R. C. L. pp. 1000 and 1001, § 210, it is said:

"It is familiar law that one in possession of chattels by theft can convey no title to an innocent purchaser. Coin and bank bills, however, are excepted from this rule. As to those, even if feloniously obtained, the holder can convey a good title to an innocent purchaser. And from the considerations of public policy, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice. Such paper takes the place and performs, to a large extent, the office of money. It is used for the transaction of much the largest part of the business of mankind. It would be most embarrassing, therefore, if every taker of such paper was bound, at his peril, to inquire into the title of the holder, and if he was obliged to take it with all the imperfections and subject to all the defenses which attach to it in the hands of the holder. It has, therefore, become the settled rule that a thief or any other person having possession of such paper fair upon its face can give a holder in due course a good title to it, against all the parties thereto, as well as the true owner. It may be taken, then, to be the well-settled rule of law that the transfer of stolen commercial paper, negotiable by delivery, to a bona fide purchaser, for value, without notice and before maturity, vests him with a good title against all the world. The rule seems to be the same in the case of instruments that have been lost by the owner. The due course holder of a lost or stolen negotiable instrument may recover against the maker and indorsers thereof, and the damage must be borne by the person from whose possession the instrument was lost or stolen."

The author cites in support of the text authorities from many states. See, also, 3 R. C. L. §§ 207 and 208, pp. 997 and 998.

In section 208 the author says:

"The law extends a peculiar protection to negotiable instruments because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect. The convenience and necessities of commerce require that instruments so generally used as an apt and ready substitute for coin should be protected by the same rule which, in the absence of fraud, confers a title to coin by its mere possession. In addition to this fundamental principle there are, in many of the situations in which the parties may be placed, additional reasons for shielding the innocent holder from defenses based on infirmities in the instrument and defects in the title thereto. The defendant may have been guilty of such negligence as to have lost the right to protection se-

cured by other rules of law. Perhaps no rule overrides the doctrine that if one's negligence influences and induces an act whereby an innocent man is injured, the culpable party must sustain the loss. And so one who signs his name to a negotiable instrument may be held liable to a bona fide holder because of his negligence in permitting the instrument to get into circulation. Although a person ordinarily may not be deprived of his property without his consent, yet if he negligently leaves an instrument transferable by delivery in such a situation that a thief may possess himself of it—it is but just that he and not an innocent purchaser should suffer the consequences of the theft."

In section 115, 3 R. C. L., it is said that a maker of commercial papers is estopped from setting up any infirmity when in its execution, consideration, or negotiation he was guilty of negligence or imprudence.

The appellee City National Bank at no time prior to its purchase of the checks sued upon knew anything of the circumstances under which they were issued.

The express company intended that the checks should become negotiable as soon as the name of the purchaser, or apparent purchaser, was signed in the upper and lower left-hand corners thereof. Such was the condition of the checks when purchased by the bank. Most, if not all, travelers' checks are handled in the same manner. In these circumstances, the bank's ownership is analogous to those cases where a check is drawn by one person to be used in paying a debt due from the person procuring the check to the person to whom the debtor has had the check made payable. The courts of Massachusetts recognized and applied this doctrine in the leading case of Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 Am. St. Rep. 426.

In S. S. Allen Grocery Co. v. Bank, 192 Mo. App. 476, 488, 182 S. W. 777, it is said at page 781:

"Considering the facts that a bank must honor the checks of its depositor, and cannot by the exercise of any degree of skillful inspection detect a forgery of a check signed and delivered in blank, we think every consideration of justice and common sense sustains the conclusion that a depositor should affix his signature to a blank check only for the purpose of directing the bank to pay out the money, and that the risk of signing and then keeping a blank check, whether the keeping be careful or negligent, should be considered a risk the maker voluntarily assumed. Trust Co. v. Conklin, 65 Misc. Rep. 1 [119 N. Y. S. 367]; Snodgrass v. Sweetser, 15 Ind. App. 682, 44 N. E. 648; Putnam v. Sullivan, 4 Mass. 45, 3 Am. Dec. 206. If the exigencies of the depositor's situation create a necessity for the signing of checks in blank, and then keeping them a time before putting them into circulation, why should he not bear the risk made by his own necessities, rather than the banker, who is a stranger to them, and is under the contractual duty to honor his written orders for the payment of money? He is the one who, in the service of his own interest, has given occasion for the commission of the wrong, and, under the familiar maxim, is the one who should bear the consequences."

See Lloyd's Bank v. Cook, 1 K. B. 794; 8 Ann. Cas. 182; notes in 32 A. L. R. pp. 291 to 299; Phillips v. Joy Co., 114 Me. 403, 96 A. 727, L. R. A. 1916E, 690.

The express company voluntarily delivered these checks to its trustee, the Oklahoma bank, to have it put them in circulation, and intended that, when in circulation, they should pass in effect as so much money. By such act, coupled with the form in which the checks were issued, the express company made it possible, and in recent times probable, for innocent persons to suffer as did the appellee bank, and should be, under the well-established rule above stated, required to sustain the loss. Jones v. Primm, 6 Tex. 170; Close v. Fields, 2 Tex. 232; Crouchley v. Clarence, 2 M. & S. 90.

1 Joyce on Defenses to Commercial Paper (2d Ed.) p. 905, quoted with approval the following from a New York case:

"The business of this country is done so largely by means of commercial paper that the interests of commerce require that a promissory note, fair on its face, should be as negotiable as a government bond. Every restriction upon the circulation of negotiable paper is an injury to the state, for it tends to derange trade and hinder the transaction of business. Commercial necessity requires that only slight evidence should be insisted upon to establish an estoppel in pais as to the validity of commercial paper. The only practicable rule is to make the face of the paper itself, when free from suspicion, sufficient evidence in the absence of notice, against all who aided to put it into circulation, unless the note is void by the positive command of a statute, such as the act against usury. No other rule would work well, for it would be intolerable if every bank had to learn the true history of each piece of paper presented for discount before it could act in safety. It is better that there should be an occasional instance of hardship than to have doubt and distrust hamper a common method of making commercial exchanges."

Having reached the conclusion that the facts and circumstances shown justified, if not compelled, a finding of estoppel as against the appellant express company to deny its liability upon the checks, I think the judgment of the trial court should be affirmed.