## CITY NAT. BANK OF GALVESTON et al. v. AMERICAN EXPRESS CO.
### (No. 1236—5268.)

Commission of Appeals of Texas, Section A. April 24, 1929.

McDonald & Wayman, H. E. Kleinecke, Jr., and Louis J. Dibrell, all of Galveston, for plaintiffs in error.

Armstrong & Cranford, of Galveston, for defendant in error.

HARVEY, P. J. This suit was brought by the City National Bank of Galveston against the American Express Company and Joe Varnell on certain "Traveler's Cheques." The instruments declared upon and introduced in evidence are similar in form, varying only in serial number and amount. The form of the instruments is as follows:

"U. S. Dollar Traveler's Cheque A3,035,-440 Three Cipher Three Five Four Four Cipher When countersigned below with this signature: W. L. Hines Jun 11, 1923 Be-

fore cashing write here city and date. American Express Company At its paying agencies. Pay this Cheque from our Balance to the order of City National Bank, Galveston, Tex. $10.00. In United States Ten Dollars In all other countries at current buying rate For Bankers' Cheques on New York Countersign here in presence of person cashing. W. L. Hines Jas. F. Fargo Treasurer This cheque is redeemable only at the Company's Offices and Bankers in United States."

On the margin of each check was printed the following words: "Guard your traveler's cheques as you would money. When cashing fill out cheque completely and countersign."

James F. Fargo was treasurer of the express company, and as such was duly authorized to sign the checks, as he did, in behalf of the express company.

The defendant Joe Varnell made no defense, but asserted the liability of the express company under the checks by adopting the pleadings of the plaintiff bank. The express company denied liability under the checks on the ground that the instruments had never been delivered, in that same had been stolen from the agent of the express company, the First National Bank of Barnsdall, Okl., while they were incomplete, and had been subsequently completed and negotiated without authority.

At the trial, the express company offered testimony to prove that the checks were taken by bank robbers, with force and arms, from the custody of the Oklahoma bank; that at the time they were so taken they were in the form above shown, except that no signature appeared in the spaces where the name "W. L. Hines" appears written on the instruments, and no date, and the name of no payee appeared on the instruments; that afterwards the blank spaces in the checks were filled in without authority from either the express company or the Oklahoma bank; that the checks in the incomplete form just stated had been placed by the express company in the custody of the Oklahoma bank, with authority in the latter bank to put same in circulation by having the person to whom the checks might be issued sign his name in the blank space for that purpose in the upper left-hand corner of each instrument; that the blank checks were held in custody by the Oklahoma bank under the terms of the following instrument, executed by said bank, to wit:

"Received in trust from the American Express Company, Travelers cheques of the American Express Company as follows.— (Describing the cheques). The undersigned accepts responsibility for the safekeeping of said cheques and the due issue thereof, and agrees to account to the American Express Company therefor, and for the proceeds received from the sale thereof. The said cheques, until sold and the proceeds thereof when sold, shall at all times remain the property of the American Express Company. The First National Bank, Barnsdall, Oklahoma, H. O. McSpadden, Cashier."

On the objection of the Galveston bank, all the above-stated testimony offered by the express company was excluded from evidence.

The record discloses that, shortly after the robbery occurred, one of the robbers was in Galveston, with the stolen checks in his possession. He had previously signed the name "W. L. Hines" in the upper left corner of each instrument. He induced Joe Varnell to cash all said checks. He transferred the checks to Varnell, and at the time of the transfer countersigned each check with the signature "W. L. Hines" in the lower left-hand corner of the instrument. Afterwards, on June 11, 1923, Varnell negotiated the checks to the Galveston bank, receiving from said bank the face value of each check. At the time the latter bank acquired the checks, it filled in the two remaining blank spaces on each check, by filling in one space with the date then current, and the other with the name of said bank as payee. The Galveston bank, in acquiring the checks, acted in good faith, and without knowledge that the checks had been stolen, or that same had not been duly issued or delivered by the express company. The trial court rendered judgment in favor of the Galveston bank against the express company and Joe Varnell for the amount of the checks. The latter prosecuted no appeal from the judgment rendered in favor of the bank against him, and makes no complaint in that respect. The express company appealed from said judgment. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause. 7 S.W.(2d) 886.

The question upon which a proper disposition of this appeal turns has reference to the action of the trial court in excluding from evidence the testimony offered by the express company, as shown above.

It may as well be said at the outset that in our opinion the Galveston bank is a holder in due course. The blank spaces, which appeared on the face of the instruments when they came into the hands of this bank did not show that the instruments were wanting in any material particular as completed negotiable instruments. We speak of those spaces for the date and name of the payee. By implication arising from the peculiar nature of the instruments, and from their general tenor, authority was conferred by the maker upon any holder to fill in these blank spaces after the instruments were delivered by the maker. It appeared from the face of the instruments that the existence of these blank spaces did not render the instruments "incomplete," as contemplated by the statute now to be noticed.

Section 15, art. 5932 (being part of the Negotiable Instruments Act), provides as follows: "Where an incomplete instrument has not been delivered, it will not, if completed

and negotiated without authority, be a valid contract in the hands of any holder as against any person whose signature was placed thereon before delivery."

The testimony which was excluded by the trial court would have shown, if same had been admitted in evidence, that, at the time the checks were stolen, the blank space for a signature which appeared in the upper left corner of each instrument, was unfilled. Lacking this signature, the instruments were "incomplete," within the meaning of the above statute. The absence of a signature in the space just mentioned rendered each of the instruments materially deficient; for, without a signature there, each instrument was lacking of the sign, required by the context, that liability of the maker had arisen, and that negotiability had been imparted to the instrument.

■ The excluded testimony would have shown that the instruments, thus incomplete, had not been "delivered" by the express company or the Oklahoma bank at the time of the robbery. The Galveston bank contends that the placing of the incomplete instruments, duly signed by the express company, in the custody of the Oklahoma bank, with authority in the bank to complete them and put them into circulation, constituted a delivery within the meaning of the above statute. In support of this contention, that portion of article 5948 which reads as follows is cited (same being part of the Negotiable Instruments Act): "In this Act, unless the context otherwise requires: * * * 'Delivery' means transfer of possession, actual or constructive, from one person to another." But this contention is regarded as unsound. The excluded testimony would have shown that, with respect to the checks, the Oklahoma bank was the agent of the express company. In legal contemplation, that bank's possession of the checks was the possession of the express company. Consequently, with the fact of this agency proved as proposed, it could not be said that the placing of the checks in the custody of said bank, by the express company, constituted such a transfer of possession as is contemplated by the last-quoted statutory provision.

■ When the instruments were placed in the custody of the Oklahoma bank, they were in such form that nothing else was needed to put them in complete form than a signature which could be readily supplied by any stranger who might gain possession of them. It is urged that the express company is chargeable with negligence in placing the checks in the custody of the bank in this form, and that, because of such negligence, the express company is estopped from claiming the protection of section 15 of article 5932. The express company is not chargeable with negligence in this respect. General knowledge that banks are robbed sometimes does not charge any man with lack of prudence in committing incomplete instruments, though duly signed by him as maker, to the custody of a particular bank. Nor is it thought that the express company, by placing the incomplete instruments with the bank, assumed the risk of liability arising against the company on account of the incomplete instruments being taken by robbery and subsequently completed and negotiated by the robbers.

■ The record before us presents no element of estoppel as against the express company. The exclusion of the testimony in question constitutes material error. For this testimony, if found to be true, and in the absence of grounds for estoppel, would have established a complete defense for the express company, under the provisions of section 15, art. 5932, of the statutes. In reaching this conclusion we have not overlooked the clause of section 16 of the same article which reads as follows: "But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed." We are satisfied that this clause was not intended by the Legislature to qualify the language contained in section 15.

We have found no decision of any court of last resort which involves the application to a state of facts such as presented in this case, of those provisions of the Negotiable Instruments Law which are contained in the sections of our statutes hereinabove mentioned.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.