Maurice Wahl, J.
This case, one of first impression, presents a novel and apparently unprecedented factual situation, albeit governed by well-established legal and statutory provisions, which are determinative of this cause.
A person named Higgins, on or about April 13,1962, deposited $130.37 with the defendant bank. In exchange therefor, for a small charge, defendant bank issued what it calls a “ Personal Money Order” or “ Register Check.” It is completely blank, save for the above legend, the name of the bank, the number of the instrument. It permits the purchaser thereof to use it, by inserting the date, the payee and the maker’s name and address. *624 The amount is machine-imbedded by the issuing bank at the time of the purchase.
Higgins apparently lost this incomplete instrument and one Walker came into possession thereof, and subsequently cashed it with plaintiff, after identifying himself as Walker and filling in the blanks. Higgins, immediately upon discovery of his loss, on April 13,1962, the same day as the deposit, notified defendant bank, and caused a stop payment to issue. The defendant bank reissued a cashier’s check to Higgins for the same amount.
Until this “Register Check” is lawfully issued by its true owner, it remains his property and is subject to his disposition. Undoubtedly, he could return it to the bank and upon due surrender of the unissued instrument recoup his deposit, subject only to the loss for the bank service charge.
In fact, this instrument is no different, save for form and name, than an ordinary check, whether regular or special type. Such checks of the last-described classes are, as the instant instrument, filled in by the true owner of the fund on deposit with the bank, as to date, payee and maker. The only difference is that here the amount is already fixed by the bank to coincide with the exact amount on deposit. Thus, while concededly this is a negotiable instrument, it is a check within the meaning of section 321 of the Negotiable Instruments Law. It does not attach itself per se to the deposit fund, until accepted, paid or certified (Negotiable Instruments Law, §§ 323, 324 and 325).
These statutes are but codification of the common law. Long ago the rationale expressed by our Court of Appeals was that : “ Banks are debtors to their customers for the amount of deposits. A check is a request of the customer to pay the whole or a portion of such indebtedness to the bearer, or to the order of the payee. Until presented and accepted, it is inchoate; it vests no title or interest, legal or equitable, in the payee to the fund. Before acceptance, the drawer may withdraw his deposit; the bank owes no duty to the holder of a check until it is presented for payment. Knowledge that checks have been drawn does not render it obligatory upon the bank to retain the deposit to meet them.” (Attorney-General v. Continental Life Ins. Co. [Matter of Merrill], 71 N. Y. 325, 331.)
The instrument in question was apparently lost by Higgins, the true owner in its incomplete state. The record here shows that Walker completed the instrument in plaintiff’s presence, and thus section 34 of the Negotiable Instruments Law is operative. That section precludes the instrument at bar from having validity (cf. Ledwich v. McKim, 53 N. Y. 307). He who finds a lost instrument and uses it by completing it is virtually a thief, *625 and not thus a bona fide holder thereof (Linick v. Nutting & Co., 140 App. Div. 265).
Finally, the court perceives that the instrument at bar is no different than a postal money order (U. S. Code, tit. 39, § 5101 et seq.). The modus operandi and the modus vivendi are the same. In one case the funds are deposited with the post office in exchange for a postal money order, the blanks of which are filled in by the remitter, save for the amount. In this case the fund is deposited with defendant bank in exchange for the personal money order, and the blanks are filled in by the remitter, save for the amount. In both cases the amount is prefixed by the issuer in the same amount as deposited. Under subdivision (b) of section 5103 of that statute, the Postmaster General may, upon satisfactory evidence of loss thereof, issue a duplicate, thus in essence stopping payment on the lost money order. The instrument at bar is similar in form and substance, and indeed, as above indicated, is called a “ Personal Money Order.” Likewise at bar, the issuing defendant bank may waive any requirements of its agreement with the purchaser of such check; and may upon satisfactory evidence, stop payment thereof on such purchaser’s order and reissue such check. The powers therefore between defendant bank and the Postmaster are indistinguishable in this aspect. Likewise here, if defendant bank be not satisfied with the remitter’s story, it may likewise refuse to stop payment or may reissue to such person as it determines is the one entitled thereto.
Plaintiff’s contention that a business man would accept and assume that such check as at bar would be the equivalent of a cashier’s check is untenable. In the latter case, the authorized signature is that of a bank official, whereas at bar the signature is that of the remitter as well as his address. Perhaps similarity between these forms exists, but in law the rights and obligations are different; the arguments by the plaintiff are well reasoned but not necessarily persuasive; hence the court is constrained to conclude that the plaintiff may not recover. Judgment for the defendant.