Harold Barr, J.
This case was submitted for decision on an agreed statement of facts. It is concerned with the following instrument (plaintiff’s Exhibit I):

The plaintiff is a holder in due course of the above instrument. The defendant bank issued the instrument to one Witzelberger. This is a comparatively new type of instrument issued by banks for a nominal fee. After obtaining the instrument Witzelberger cashed it with the plaintiff after indorsing it.
At the time that Witzelberger obtained this instrument from the defendant bank, he gave the bank his personal check drawn on a special account in another branch of the same bank. It developed that the check so given was drawn upon insufficient funds, so that upon presentation of the instrument in suit by the plaintiff, it was dishonored by defendant bank and stamped “ Payment Stopped”. The question before the court is who should bear the loss as between the defendant bank and the plaintiff, holder in due course.
This instrument is one for the payment of money, negotiable in form (Negotiable Instruments Law, § 20) and is therefore either a bill or a note (Britton, Bills and Notes [2d ed.], p. 22). Does the form of the instrument make the defendant primarily liable? In order to determine this, it is necessary, if possible, to determine the nature of this instrument. If it is an ordinary *997 check as defendant contends, then like any other inland bill of exchange the defendant is merely the drawee and as such does not become liable until and unless it accepts, pays, or certifies the instrument (Negotiable Instruments Law, §§ 211, 321, 323, 324, 325).
If on the other hand this is a money order or a note as the plaintiff contends, then the defendant is in the category of a maker and primary obligor (Negotiable Instruments Law, §§ 110, 320). Finally, if it is impossible to determine the exact nature of the instrument because of ambiguity, then the plaintiff has the statutory right of treating it either as a bill of exchange or a note (Negotiable Instruments Law, § 36, subd. 5).
In view of the fact that instruments of this type have been used for a comparatively short time, there are few cases on the subject. In fact, the only case that could be found with any degree of applicability is that of Garden Check Cashing Serv. v. First Nat. City Bank (38 Misc 2d 623). However, that case concerns an incomplete instrument, undelivered, and in the hands of one who found or stole it and who was, therefore, not a holder in due course. The case at bar involves a valid instrument properly negotiated to a holder in due course, consequently the decision in the Garden case (supra) upon the facts should not be determinative of the issues here. Moreover, apart from the facts I am disinclined to follow the court’s characterization of the instrument involved.
The analogy of the instrument here involved with a United States Postal Money Order is not helpful. In issuing money orders, the United States Government is exercising a governmental function and is not engaging in a commercial transaction. Hence, such instruments are not controlled by commercial law (Bolognesi v. United States, 189 F. 335, cert. den. 223 U. S. 726).
An examination of the instrument in suit (Exhibit I) only confuses the diagnosis. At first glance it appears to resemble an ordinary check in form, but a close inspection reveals several differences. The words “ Personal Money Order, not valid over $250.” are printed on the face and in four other places on the check there appear the words “ Personal Money Order Further, where the maker of a check or the drawer of a bill ordinarily signs, there is an additional line for the address of the signer which is a requirement under ordinary circumstances for indorsers or comakers, but not for the maker or drawer of a check. All of these differences between the instrument at issue and an ordinary check would seem to indicate that the bank would honor the order to pay no matter who signed the face *998 of the instrument, assuming of course an otherwise valid negotiation of the instrument.
One may conclude that since the instrument is ambiguous, a holder in due course should have the option of treating it as a bill or note (Negotiable Instruments Law, § 36, subd. 5). However, there appear to be more compelling reasons to hold the bank liable here.
The underlying relationship between the parties to the instrument in suit is different than that involving a check. In the latter case, a debtor-creditor relationship is created between the drawer (depositor) and drawee (bank) as to the deposit. The issuance and delivery of the check does not operate as an assignment of the funds until it is paid, accepted or certified because the drawer has the absolute power and right to revoke at any time before any of these events occur (Negotiable Instruments Law, §§ 321, 323, 324, 325).
In the instrument in suit, the drawer purchases the instrument from the bank. The transaction is in the nature of a sale. No deposit is created. The funds to pay the instrument, immediately come within the bank’s exclusive control and ownership. While it is true that the bank at the purchaser’s request may stop payment on the instrument and issue a different one, the bank has the absolute power to grant or refuse such request.
The bank’s contention that the instrument is a check is inconsistent with its own acts. The bank (drawee) stamped “ Stop Payment ” on the instrument in suit on its own order. Nowhere in the Negotiable Instruments Law is there any provision that a drawee may “ Stop Payment ” of a check unless ordered to do so by the drawer.
For the foregoing reasons I find that the instrument in suit constituted an obligation or liability of the bank from the moment of its issuance, and attached itself per se to the fund created for payment of the instrument. The fact that the bank was frustrated in retaining the fund because instead of cash, it accepted a check drawn on insufficient funds in payment for the instrument, is no reason to hold otherwise. As between two innocent parties it is axiomatic that the one who is negligent should suffer the loss. Accordingly, judgment is awarded to the plaintiff in the amount of $40, with interest from November 21, 1963, together with costs and disbursements in this action.