## WAYLAND H. SALLEY *vs.* ISAAC A. TERRILL.

### Penobscot.    Opinion  December 10, 1901.

*Bills and Notes.    Indorsee.    Delivery.    Agent.    R. S., c. 1, § 6. par. XXI.*

A negotiable security, stolen from the maker, before it has become effective as an obligation by actual or constructive delivery, cannot be enforced by any subsequent holder.

The defendant was engaged in a lumbering operation, and Hurd was in his employ.  Among his duties was that of keeping the time of the men in the woods, and when one was discharged, to draw an order on the defendant for the amount due.

Blank orders were furnished Hurd by the defendant for this purpose.  As a matter of practice Hurd drew an order on the defendant payable to the order of Harry Carter, for seventy-five and 25-100 dollars, the same being in full settlement for cooking.  This order was never delivered to Carter, nor intended to be delivered.  Hurd left it on his table with other papers, for a few moments while he was called away, and on his return he took all the papers and everything and burnt them up, and supposed the order was thus burned.  Carter in the meantime had abstracted the order.  Later, Hurd thinking of the order, asked Carter, who had been near when it was written, if he had seen it, and he said he had not.  Carter negotiated the order to the plaintiff for a valuable consideration without notice of the facts.  This suit is to recover the contents of the order.  *Held;*

1.  If the order had been delivered by Hurd to Carter as a valid paper, it might be regarded as an accepted order, or even a promissory note of defendant.

2.  But it was not intended to be or become a valid order.  Until delivered to Carter, as a completed and existing order, it had no validity, and was in law mere blank paper.  Its abstraction by Carter and negotiation to plaintiff gave it no life, and created no liability of the defendant, either to Carter or the plaintiff as a bona fide holder from him.  It had no legal inception or existence as an order.

On report.    Judgment for defendant.

Assumpsit on an order drawn by Charles E. Hurd upon the defendant, payable to the order of Harry Carter, and by him indorsed to the plaintiff.  In defense it was contended that the order was never delivered or intended to be delivered, but was stolen from the drawer by Carter.

*M. Laughlin,* for plaintiff.

*W. H. Powell,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, FOGLER, POWERS, PEABODY, JJ.

STROUT, J. This is an action to recover the contents of an order drawn by Charles E. Hurd upon defendant, payable to the order of Harry Carter and by him indorsed to plaintiff. Plaintiff presented it to defendant for acceptance, which was refused. Defendant was engaged in a lumbering operation and Hurd was in his employ. Among his duties was that of keeping the time of the men, and when one was discharged to draw an order on defendant for the amount due. Blank orders were furnished by defendant to Hurd for this purpose.

Plaintiff claims to hold defendant upon the ground that as Hurd was the agent of defendant, authorized to draw orders of this kind, his signature was in law and effect the signature of defendant, and thus being an order upon himself, it operated as an accepted order, or as a promissory note. That such would be its legal effect, is conceded by counsel. *Hancock Bank* v. *Joy,* 41 Maine; 568; R. S., c. 1, § 6, par. XXI.

Hurd testified, and his testimony is uncontradicted, that "he wrote the order simply as a matter of practice," that he left it on his table at the camp "among some papers and other stuff," that he was called away a few moments and on his return he "took all the papers and everything and burnt them up," and supposed the order was thus burned. . . . . but later, remembering the order, he asked Carter who had been near when the order was written, if he had seen it while he was absent, and he said he had not; that the order did not represent the amount due Carter, and was not delivered nor intended to be delivered to Carter by Hurd, or by his authority. The inference is plain that the possession of the order by Carter was obtained wrongfully and by theft.

The order was drawn and dated November 14, 1898, and was purchased by plaintiff December 17, 1898. Ordinarily such lapse

of time, before presentation of a demand order, would be sufficient to show that it was dishonored when plaintiff received it—but as it purported to be given to an operative in the forest, who might not be able to present it earlier, if there was evidence upon the point, the delay might not be regarded as unreasonable.

Waiving this point, the question recurs, whether a negotiable paper, drawn and signed, but not delivered nor intended to be delivered to the payee, the possession of which is obtained by the payee, by theft, can create a liability of the maker or drawer to a bona fide holder for value, without notice. It is familiar law that one in possession of chattels by theft, can convey no title to an innocent purchaser, but coin and bank bills are excepted from the rule. As to those, even if feloniously obtained, the holder can convey a good title to an innocent purchaser.

To favor commerce, the law makes an exception also as to negotiable paper, and permits the bona fide indorsee without notice to acquire title from a person who had none in himself. Where by fraud and without negligence one is induced to sign a promissory note, under the representation and belief that it is a paper of another character, and delivers it to the payee, the innocent indorsee before maturity may recover of the maker. From the many cases supporting this doctrine that might be cited, we refer only to *Nutter* v. *Stover*, 48 Maine, 166; *Kellogg* v. *Curtis*, 65 Maine, 59. So when the maker of negotiable paper deposits it with a third, to be delivered on a certain contingency, or for a specific purpose not apparent upon the paper, and such third party violates the trust and wrongfully makes delivery, the bona fide indorsee before maturity and without notice, may recover from the maker. But in all these cases the instrument was either delivered to the payee by the maker, or by his agent, and came into his possession as a complete and executed contract.

In the case before us, where the order had never been delivered, and therefore had no legal inception or existence as an order, the question is whether there is any liability upon it to an innocent indorsee for value. As is said in *Burson* v. *Huntington*, 21 Mich. 415, "the wrongful act of a thief or a trespasser may deprive the

holder of his property in a note which has once become a note, or property, by delivery, and may transfer the title to an innocent purchaser for value.   But a note in the hands of a maker before delivery is not property, nor the subject of ownership, as such. It is in law but a blank piece of paper.   Can the theft or wrongful seizure of this paper create a valid contract on the part of the maker against his will, where none existed before?   There is no principle of the law of contracts upon which this can be done, unless the facts of the case are such that in justice and fairness, as between the maker and the innocent holder, the maker ought to be estopped to deny the making and delivery of the note."   In that case the parties had partially agreed upon the sale by the payee of the note to the maker, of certain territory under a patent right, for which a note was to be given with a surety.   The note was made and signed in the maker's house in presence of his sister.   It was laid upon the table, the maker telling the payee not to touch it till he came back—and while he was gone the payee took the note, against the objection of the sister, and went off with it, without giving a deed of the territory, or anything else for it, and negotiated it to plaintiff before maturity, for value.   It was held that plaintiff could not recover.   In *District of Columbia* v. *Cornell*, 130 U. S. 655, negotiable certificates, issued by the Board of Public Works of the District, had been redeemed and cancelled by the proper officer, by stamping in ink across the face, words stating such cancellation.   They were afterwards stolen by a clerk, who had no duty or authority connected with their redemption or care, the marks of cancellation effaced by detersive soap and by pasting coupons over them, and then put in circulation.   They were held invalid in the hands of an innocent holder.   To the same effect are *Cline* v. *Guthrie*, 42 Ind. 227; *Hall* v. *Wilson*, 16 Barbour, 548; *Branch* v. *Commissioners of Sinking Fund*, 80 Va. 427; *Baxendale* v. *Bennett*, 3 Law Reports (Queen's Bench) 525.   In the last case it is said that where the maker or acceptor has been held liable, "he has voluntarily parted with the instrument,—it has not been got from him by the commission of a crime.   This undoubtedly is a distinction and a real distinction.   The defendant here

has not voluntarily put into any.one's hands the means or part of the means for committing a crime." That there must be delivery of the paper, either actually or constructively, is clear. Until then it has no existence as a contract. *First National Bank* v. *Strang*, 72 Ill. 559.

Cases may be found apparently sustaining an opposite view, but an examination of them will show that peculiar facts existed, on which the decisions were based, and which do not appear here. Of such is *Worcester County Bank* v. *Dorchester & Milton Bank*, 10 Cush. 490. There a bank bill, intended for circulation as money, and in a complete state of preparation for issue, had been stolen from the bank, and the innocent holder was allowed to recover. But in the opinion it is suggested, though not decided, that a bank bill is not governed by the same rule as ordinary negotiable securities. *Cooke* v. *United States*, 91 U. S. 389, cited as an opposing authority, rests upon peculiar facts, unlike those presented here. Of this case, however, that court in a later case, *District of Columbia* v. *Cornell*, supra, said, —" We are not prepared to extend the scope of that decision."

We think that the weight of authority and the sounder reason is that a negotiable security stolen from the maker, before it has become effective as an obligation by actual or constructive delivery, cannot be enforced by any subsequent innocent holder.

It is urged that the case falls within the principle that when one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it. This maxim is mainly confined to cases where the party who is made to suffer the loss has reposed a confidence in the third person whose act has occasioned the loss, or in some other intermediate person whose act or negligence has enabled such third person to occasion the loss. It applies where the drawer or maker has intrusted the paper to a third person to be delivered in a certain event, not apparent on the paper, and it is wrongly delivered, or is sent by mail and gets into wrong hands; as the party intended to deliver to some one, and selected his own mode of conveyance, or when the maker has himself been deceived by fraudulent acts or

representations of the payee or others, and thereby induced to deliver or part with the note or indorsement, and the same is fraudulently obtained from him. And there may be such gross carelessness or recklessness of the maker in allowing an undelivered note to get into circulation as will justly estop him from setting up non-delivery, as if he were knowingly to throw it into the street, or otherwise leave it accessible to the public, with no person present to guard against its abstraction under circumstances where he might reasonably apprehend that it would be taken. Upon this principle, *Ingham* v. *Primrose*, 7 C. B. (N. S.) 82, was decided, where the acceptor tore the bill into halves (with the intention of cancelling it) and threw it into the street, and the drawer picked them up in his presence, and afterwards pasted the two pieces together and put them into circulation.

The case before us does not show negligence of this character. The order was drawn at the table of Hurd, and momentarily left there with other papers of his, to which no one had right of access, and from whence it could only be abstracted by a criminal act, which he could not reasonably anticipate.

*Judgment for defendant.*