Moses T. Phillips *vs*. A. W. Joy Company.

Penobscot.   Opinion February 4, 1916.

*Agency.    Negligence of maker of note or check.    Negotiability.    Rights of innocent holders of stolen notes or checks.
Theft of negotiable securities.*

When a check, or bank draft, is signed by a person having authority to do so, addressed to a bank in which the drawer has funds subject to check, with blanks for date, amount and name of payee left unfilled, and, by reason of the negligence of the drawer as to the safe keeping of such check after signature, the same is unlawfully obtained by a stranger, the blanks filled, and thereafter the check comes into the hands of a bona fide holder, for value, without notice, the drawer is liable thereon.

In this case negligence of the drawer is established sufficient to bring it within the above rule.

The printed record discloses that each day three to ten checks of the defendant company were signed in blank by some person having lawful authority, the same being left with the clerk in the office of the defendant, she having authority to fill in the blank places. Check in question was supposedly stolen and blank places filled in and cashed by plaintiff, who was admitted to be an innocent holder thereof.   Payment of same refused by bank.   Action of assumpsit was brought to recover upon said check.   Defendant pleaded general issue.

At close of testimony, questions of law having arisen, the case was reported to the Law Court to determine rights of parties and render judgment.   Judgment for plaintiff for amount sued for and interest from date of the writ.

Case stated in opinion.

*John Wilson*, for plaintiff.

*U. G. Mudgett*, for defendant.

Sitting: Savage, C. J., Cornish, King, Haley, Hanson, Philbrook, JJ.

Philbrook, J. | The plaintiff is one of the ticket agents of the Maine Central Railroad Company at Bangor. On the evening of February 10, 1915, while attending to his duties at the office of the company, his telephone bell rang and he answered the call. He says he was as sure as one could be that the voice coming over the wire was that of Mr. Wheaton, who, as the evidence shows, was acting manager of the defendant company at that time. The sender of the message, whoever he might have been, asked the plaintiff if he would cash one of the defendant's checks, stating that the funds of the defendant were locked up and there was a man who wanted a mileage ticket. The plaintiff consented, and in the course of twenty minutes or half an hour a man came to the window of the ticket office who presented a check for $113.75 payable to the order of Earl S. Woodbury, drawn on the Eastern Trust and Banking Company, and signed "A. W. Joy Co. by J. F. Wheaton, Treas." The name of the company in the signature was printed but the name and designation of the signer were written. In the upper left hand corner were printed the name and business of the defendant company and just below this printing, made by a protectograph stamp, were the words and figures "Not over one hundred twenty $120$." The plaintiff asked the man if he were Earl S. Woodbury, and if he were the man about whom Mr. Wheaton telephoned, to both of which questions affirmative answers were given. The check bore the earmarks of genuineness and plaintiff says he recognized the signature of Mr. Wheaton. Upon request, therefore, the mileage book was delivered and the balance of the amount paid in cash, the check having been first endorsed by the payee. In due time the check was presented to the Trust Company but payment was refused. While denying that he ever telephoned, as claimed by plaintiff, Mr. Wheaton admitted the signature upon the check to be his own, but said this check was signed by him in blank and that after such signature it had been stolen, the date, amount, and name of the payee having been written in, and the protectograph stamp used, after the stealing. As soon as the theft had been discovered the Trust Company was directed not to pay the check when presented. Mr. Wheaton testified that it was his custom, to sign enough checks in blank during the morning for use during the day and that Miss Butler, the clerk and bookkeeper, filled in the dates, amounts and

names of the various payees as occasion demanded. The testimony shows that after such signature by Mr. Wheaton, the check book was kept sometimes in the office safe, sometimes in the drawer of a desk in the office and sometimes on top of the desk. The plaintiff testified that the bookkeeper told him it would be easy for anybody to come in and abstract one of the checks while she was out making change for the men. This testimony was not contradicted by Miss Butler. Mr. Wheaton testified that there was nothing to prevent the general help from access to the office although either he or Miss Butler was supposed to be there all the time. On cross examination he stated that the office might have been left alone, that he had been in the store when there was no one in the office and that there was no lock on the office door. Miss Butler, the bookkeeper, stated that occasionally the office had been left alone for ten or fifteen minutes or perhaps a little longer at times. On cross examination she said the check book was left on the desk quite often during business hours.

It is claimed by plaintiff, practically admitted by defendant, and we have no hesitation in finding from the record of the case, that the plaintiff is a bona fide holder of the check for value, that he took it without notice of any facts which would impeach its validity between the antecedent parties, and that he took it under an indorsement made before the same became due. *Goodman* v. *Simonds,* 20 How., 343. Under the decisions of some courts, whose opinions are entitled to great consideration, this would settle the controversy in favor of the plaintiff.

But without discussing the facts the defendant claims that it is not liable, and cites one case, and only one, as its authority for non-liability, viz., *Salley* v. *Terrill,* 95 Maine, 553. In that case the court upheld the doctrine that when a negotiable security had been stolen from the maker before it had become effective as an obligation, by actual or constructive delivery, it cannot be enforced by a subsequent innocent holder. But in that case the court also held that there may be such gross carelessness or recklessness of the maker in allowing an undelivered note to get into circulation as will justly estop him from setting up non-delivery in defense when the paper is in the hands of an innocent third party. Except in cases of such negligence, there is conflict of authority as to the

doctrine held in *Salley* v. *Terrill,* supra, but we are not now called upon to attempt a reconciliation of those authorities since the case at bar, to our minds, presents elements which readily distinguish it from *Salley* v. *Terrill.* In the latter case the paper, an order for payment of wages alleged to be due an employee, was completed in all its details, while in the case at bar there was only a signature upon a check, and all spaces for date, name of payee, and amount, were left blank.

In *Abbott* v. *Rose,* 62 Maine, 194, the defendant voluntarily signed a blank out of which a promissory note was made when he supposed the blank was to be filled out for another purpose. In that case the court said: "The note, then, owed its existence to some instrumentality on his part. The perfected note was the result of his putting his name to the blank; a result which might have been contemplated as the natural and even probable effect of such an act. The signature contributed to that end very materially, and that end was reached by the confidence, misplaced though it was, which he had in the payee. If, then, this act resulted from negligence, or a want of due care on the part of the defendant, however innocent he might be, he would be responsible to any person equally innocent with himself who is injured by that act. This results not only when the person committing the fraud is the appointed agent of the defendant, but where no such relation exists." In the same case the court cited with approval the case of *Trigg* v. *Taylor,* 27 Misso. R., 245, in which that court declared: "If, however, a bill, note or check is so negligently drawn, with blank spaces left for the addition of other words or figures, that alterations can be so made as not to excite suspicion, the loss ought to fall upon the person in fault, according to the familiar rule, that when one of two persons must suffer by the act of a third, the one who affords the means to the wrong-doer must suffer the loss." Our court further added that upon this question of negligence it can make no difference that the party did not intend to deliver a note and further said that if the delivery itself was through a want of care the effect is equally injurious as if the delivery was intentional but with blanks carelessly left unfilled.

In *Kellogg* v. *Curtis,* 65 Maine, 59, the court said, referring to *Abbott* v. *Rose,* supra: "It was there held that a person who neg-

ligently signs and delivers to another a blank note not knowing it to be such, but supposing it to be some other agreement, was liable thereon, if the blanks were afterwards wrongfully filled and the note then transferred to a bona fide holder for value, without notice of the fraud."

Through all these cases, and those holding similarly, there runs a distinction between a completed piece of commercial paper with all its blanks filled, including the name of the payee to whom delivery had not been made, either actually or constructively, and a paper signed by the maker with blanks left unfilled as in the case at bar. The element of negligence on the part of the signer also plays an important part. It is conceded that this check was signed in blank. Was there such negligence on the part of the defendant company, or its agents, as will permit this plaintiff to recover. The case seems to show quite clearly that the check book was left about the office in such a way that this check was in fact undoubtedly stolen, and as we have already seen, according to the plaintiff's undisputed testimony, the bookkeeper admitted that "it would be easy for any body to come in and abstract one of the checks." Under all the circumstances it seems to us, in view of the character of the paper stolen, its condition as to signature when stolen, the negligence in leaving the signed checks in such environment that theft was easy, and the apparent care of the plaintiff before cashing the check, that we should apply the rule of estoppel noted in *Salley* v. *Terrill,* supra, as well as the rule that when one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it.

*Judgment for plaintiff for $113.75*
*with interest from date of the writ.*