PAVILIS, Respondent, v. FARMERS UNION LIVESTOCK COMMISSION, Appellant

(298 N. W. 732.)

(File No. 8371. Opinion filed June 20, 1941.)

**Bailey, Voorhees, Woods & Bottum** and **H. L. Fuller,** of Sioux Falls, all for Appellant.

**Claude A. Hamilton,** of Sioux Falls, for Respondent.

ROBERTS, J. This is an action brought to recover upon an instrument alleged to be a check transferred to plaintiff for value by one C. Hoard who was named as payee therein. Defendant interposed an answer alleging, first, that plaintiff was not a holder of the check in due course, and

second, that the instrument having been signed in blank by the defendant and having been stolen from its possession prior to delivery had no legal inception or existence as a check. The court made findings in favor of the plaintiff and from the judgment entered thereon defendant has appealed.

The case was submitted upon an agreed statement of facts. The facts material to a decision are as follows:

"It was the practice of defendant's office manager, who was authorized to sign checks, to sign a block of instruments, printed to be used as checks * * * at the beginning of the business day and deliver the same to the bookkeeper whose regular duty it was to complete the instruments as checks and deliver the same to customers during the business day and it was likewise the practice of such office manager to procure the return of such signed instruments not delivered at the close of the business day for the purpose of safekeeping and for the purpose of checking or auditing the same, which instruments were thereafter placed in a safe in defendant's office; that the office of said office manager adjoined the front office in which the bookkeepers worked and it was the practice of the office manager to personally supervise the work of the bookkeepers during the business day and during the business day such bookkeepers worked at open desks in the presence of customers at the counter and in the presence of each other and in the presence of yardmen employed by defendant, who used the office occupied by bookkeepers as their headquarters.

"That upon February 24, 1939, and for some time prior thereto one C. Hoard was employed by defendant as a bookkeeper and clerk whose duties were particularly to prepare an account of sales from the scale tickets presented by defendant's customers, and that it was the duty of another bookkeeper in defendant's employ, * * * to prepare or complete instruments printed to be used as checks upon such shippers' proceeds account for amounts indicated by such scale ticket and account of sales which instruments had, previous to being so completed, been signed by defend-

ant's manager or office manager, who were the only employees of defendant expressly authorized by it to sign checks; that said Hoard was expressly authorized by defendant in the absence of such other bookkeeper to complete and deliver checks * * * only during business hours and only to defendant's customers and only for amounts due them as shown by such account of sales, but said Hoard was not expressly authorized by defendant to prepare, complete or deliver checks on such account, except during business hours, or for any amount other than as indicated by such scale tickets and account of sales or to anyone other than customers for whom livestock had been sold by defendant and said Hoard was not expressly authorized to sign or endorse checks in the name of or on behalf of defendant.

"That the said Hoard was not entrusted with a key to the defendant's office although he did have access to a key kept in a desk in the office for the purpose of unlocking the padlock on the inside of the gate across the counter between defendant's office and the hall, it being his duty to enter the office after it had been opened by one of the defendant's employees entrusted with a key to such office, and if the gate had not been previously opened to unlock the same at the opening of the business day with the key placed in such desk.

"That on or about the 24th day of February, 1939, after the close of defendant's office said Hoard gained access thereto by unlocking the gate across the counter, presumably with the key to the lock which he had removed from the desk in the office before leaving the office, and climbed over the counter into defendant's office and thereafter opened the safe in defendant's office by using the combination, which he knew, and without defendant's knowledge and consent took therefrom certain instruments printed for use as checks upon such shippers' proceeds account, blank as to amount, date and payee, which had been signed by defendant's office manager authorized to sign checks, in one of which instruments said Hoard thereafter without defendant's knowledge or express consent inserted

the date, amount and payee in the manner which appears more fully from such instrument * * *.

"That said Hoard thereafter on said 24th day of February, 1939, placed his name upon the back of said instrument and delivered the same to plaintiff for a consideration of the value of One Hundred Two and 85/100 Dollars ($102.85)."

The check is in all respects regular except that the name of the payee is written after the word "pay" and in the space intended for statement of the amount in writing. It is contended that the instrument is not payable to order and is therefore non-negotiable, but a determination of this question is not necessary to a decision in this case.

The instrument came into possession of plaintiff as an innocent purchaser for value. It is contended, however, that the check was an incomplete instrument when stolen and cannot be enforced by plaintiff whether a holder in due course or not. The Negotiable Instruments Law expressly provides that "every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto." SDC 46.0121. This is merely a legislative enactment of the common law rule. Dimock State Bank v. Boehnen, 46 S. D. 50, 190 N. W. 485; McCormick Harvesting Machine Co. v. Faulkner, 7 S. D. 363, 64 N. W. 163, 58 Am. St. Rep. 839. This language that a contract becomes effectual only by delivery is modified by subsequent language in the section at least to the extent that if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands. Both under the statute and the common law the fact that a completed instrument is stolen from its drawer prior to its delivery does not constitute a defense against a holder in due course. Daniel on Negotiable Instruments, 7th Ed., §§ 983 and 984; Angus v. Downs, 85 Wash. 75, 147 P. 630, L.R.A. 1915E, 351; Farmers' State Bank v. Koffler, 60 N. D. 11, 232 N. W. 307, 70 A.L.R. 1223; Gruntal v. National Surety Co. et al., 254 N. Y. 468, 173 N. E. 682, 73 A.L.R. 1337. The provisions of SDC 46.0121 are confined to completed instruments. SDC 46.0120

referring to incomplete instruments is worded as follows:

"Where an incomplete instrument has not been delivered it will not, if completed and negotiated, without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery."

We think it clear that the check in controversy was an incomplete instrument when stolen and cannot be enforced in the absence of conduct on the part of the drawer creating an estoppel. Linick v. A. J. Nutting & Co., 140 App. Div. 265, 125 N.Y.S. 93; Hockett v. Pacific States Auxiliary Corporation, Cal. App., 15 P.2d 547; Massachusetts National Bank v. Snow, 187 Mass. 159, 72 N. E. 959.

It is urged by counsel that defendant is chargeable with negligence and is estopped to deny liability. In support of his contention he cites Northern Pacific Ry. Co. v. Spokane Valley Growers' Union, 132 Wash. 607, 232 P. 691, 43 A.L.R. 194; Johnson v. Weed & Gumaer Mfg. Co., 103 Wis. 291, 79 N. W. 236; Geddes v. Blackmore, 132 Ind. 551, 32 N. E. 567; Leseure v. Weaver, 89 Ill. App. 628; Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 Am. St. Rep. 426. The cases cited are those in which the party sought to be charged upon a negotiable instrument has entrusted an instrument signed in blank to an agent or some other person who has wrongfully completed and negotiated the instrument; an agency or trust was created by means of which the fraud was committed and the fact that there was no authority for completing the instrument or that the paper was otherwise wrongfully dealt with was no defense.

Plaintiff also cites the case of Phillips v. A. W. Joy Co., 114 Me. 403, 96 A. 727, 728, L.R.A. 1916E, 690. The question of the liability of the signer of a blank check which was stolen, completed and negotiated to the plaintiff was presented. The court held that the signer of the check was liable, and referring to the negligence of the defendant said: "It is conceded that this check was signed in blank. Was there such negligence on the part of the defendant company or its agents as will permit this plaintiff to recover? The

case seems to show quite clearly that the check book was left about the office in such a way that this check was, in fact, undoubtedly stolen, and, as we have already seen, according to the plaintiff's undisputed testimony, the book-keeper admitted that 'it would be easy for anybody to come in and abstract one of the checks.' Under all the circumstances it seems to us, in view of the character of the paper stolen, its condition as to signature when stolen, the negligence in leaving the signed checks in such environment that theft was easy, and the apparent care of the plaintiff before cashing the check, that we should apply the rule of estoppel noted in Salley v. Terrill, supra [95 Me. 553, 50 A. 896, 55 L.R.A. 730, 85 Am. St. Rep. 433], as well as the rule that, when one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it."

This case differs in its facts from the case at bar. Checks signed in blank by the defendant in that case and left unguarded in his office to which strangers had access rendered him liable by reason of negligence.

In Baxendale v. Bennett, L. R. 3 Q. B. Div. 525, 33 Am. Rep. 137, 4 Eng. Rul. Cas. 637, the defendant at the request of one Holmes signed a blank acceptance. Defendant after the paper had been returned to him by Holmes placed it in an unlocked desk in his chambers. The bill was stolen from the desk, completed and negotiated. It was contended that defendant had so negligently dealt with the acceptance as to have facilitated the theft. The court held that plaintiff, a bona fide holder, was not entitled to judgment.

In Linick v. A. J. Nutting & Co., supra, a blank check signed by the plaintiff was stolen by persons who filled in the amount and a fictitious name as payee and presented it to the drawee bank to be certified. They endorsed the name of the payee and transferred the check to the defendant for value who collected the amount of the check from the bank. The drawer having taken up the check from the bank instituted action for money had and received. Defendant sought to defend on the ground that plaintiff was estopped

by reason of negligence to deny liability on the check. But the court held that the check was an incomplete instrument and that negligent custody of the check was not borne out by the facts.

In a recent case, City National Bank of Galveston v. American Express Co., Tex. Com. App., 16 S. W.2d 278, 280, the court in answer to the contention that the defendant company should not be heard to deny the validity of travelers checks stolen from a selling agency, completed and negotiated to innocent purchasers for value, there being no negligence on the part of the selling agency, said: "General knowledge that banks are robbed sometimes does not charge any man with lack of prudence in committing incomplete instruments, though duly signed by him as maker, to the custody of a particular bank. Nor is it thought that the express company by placing the incomplete instruments with the bank, assumed the risk of liability arising against the company on account of the incomplete instruments being taken by robbery and subsequently completed and negotiated by the robbers."

See, also, Daniel on Negotiable Instruments, 6th Ed., §§ 986 and 987; Negligence in the Law of Bills and Notes, 24 Col. L. Rev. 685; 13 Minn. L. Rev. 146; Annotations, L.R. A. 1915E, 351 and 110 A.L.R. 976.

 While there can be no question that the provisions of the Negotiable Instruments Law do not prevent an inquiry into the question of the negligent custody of an incomplete instrument, and that, if as a result of negligence such instrument comes into the hands of a holder in due course, the latter may recover, yet we cannot say under the facts and circumstances of the instant case that defendant was negligent. The loss did not result from completion and negotiation of the check by one entrusted with its possession, and we are not concerned with a breach of duty as between a depositor and drawee. It does not appear that defendant company had reason to mistrust its employee and to anticipate the wrongful taking by him of a check signed in blank, the subsequent completion and negotiation. The

drawer owes the duty to use due care in the execution of checks, but it does not follow as a legal conclusion that signers of checks in blank assume the risk of liability in all cases where such instruments are wrongfully taken, completed and negotiated. To hold that a person is negligent in having in his possession a check signed in blank would require something more than the exercise of ordinary care.

The judgment appealed from is reversed.

All the Judges concur.