STATE OF MAINE                                    SUPERIOR COUR
SOMERSET, ss.                                     SKOWHEGAN
                                                  DOCKET NO. AP-16-05


PETER RACKLEFF et. al.,
        Plaintiffs


v.                                                **DECISION AND ORDER**


JEFFREY LAMBERT,
        Defendant


## Procedural posture:

This case is before the undersigned on defendant Jeffrey Lambert's appeal of a small claims judgment in favor of plaintiffs Peter and Kimber Lee Rackleff, the parties having waived oral argument.

## I. Background:

In the summer of 2014, Jeffrey Lambert loaned his John Deere bulldozer to his nephew, Lucas ("Luke") Nelson. (Tr. 29.) On August 3, 2014, in response to a Craigslist post, Peter Rackleff purchased Lambert's John Deere bulldozer from Lucas Nelson for $4,500. (Tr. 9, 17; Pl's Ex. 1.) Peter and Kimber Lee Rackleff, who own an equipment auction company, then "did some work" on the bulldozer to prepare it for sale at an October 2014 equipment auction. (Tr. 8-10, 17.) This included changing the fluids and filters and having a new seat made. (Tr. 17.) On or about October 11, 2014, prior to the October equipment auction, Lambert called the Rackleffs and informed Peter Rackleff that the bulldozer had not been Lucas Nelson's to sell. (Tr. 10-11, 14, 15-16, 22-24, 34.) The Rackleffs asked a family member "in law enforcement" to look into the status of the bulldozer and were told that it was never reported stolen. (Tr. 11, 23.) Nonetheless, they decided not to sell the bulldozer and instead used it occasionally themselves. (Tr. 11, 25.)

On October 17, 2014, Lambert (in his own name and in the name of his business) filed a civil complaint in the Somerset County Superior Court against Luke and Dylan Nelson for conversion and unjust enrichment with regard to the bulldozer, a truck loader, and a 4-wheeler. Lambert sought damages of $20,037 plus costs and attorney

fees. (Tr. 38-39; Pl.'s Ex. 3.) The complaint listed the value of the bulldozer as $15,000. (Pl.'s Ex. 3 ¶ 9, 12.) Although he was aware at the time that the Rackleffs had already purchased the bulldozer from Luke and Dylan Nelson, Lambert did not mention the Rackleffs or the sale in his complaint. (Tr. 40-41.)

On March 30, 2015, this Court entered a default judgment against Luke and Dylan Nelson. (Pl.'s Ex. 4; *Lambert et al. v. Nelson et al.*, SKOSC-CV-14-36 (Me. Super. Ct., Somerset Cty., Mar. 30, 2015) (hereinafter "*Lambert v. Nelson*").) In the default judgment, this Court ordered Luke and Dylan Nelson to return the equipment within ten days and pay costs and attorney's fees, or, if they failed return the equipment, to pay Lambert and his business $20,037 for the value of the equipment (including $15,000 for the bulldozer), plus interest, costs, and attorney's fees. (Pl.'s Ex. 4.)

On May 8, 2015, pursuant to a request filed by Lambert, this Court issued a writ of possession for the bulldozer listing Luke and Dylan Nelson as the defendants.[1] (Pl.'s Ex. 2.)

On May 16, 2015, Lambert contacted the Fairfield Police Department and requested civil standby while Lambert took the bulldozer from "the pickers yard on Rt. 201." (Tr. 30-31; Def.'s Ex. 2 1, 2.) Lambert showed Officer Matt Wilcox "the court paperwork" and explained that Luke Nelson had sold the bulldozer to a third party. (Def.'s Ex. 2 2.) Officer Wilcox escorted Lambert as Lambert hauled away the bulldozer. (Tr. 30-32; Def.'s Ex. 2 2.) Officer Wilcox later informed Peter Rackleff that Rackleff "would have to get his money back from Nelson through the civil process." (Def.'s Ex. 2 2.) (Peter Rackleff testified that he had received a telephone call from the Fairfield Police Department informing him that somebody had a writ of possession granting that person "the right to take this dozer because it was his property." (Tr. 11.)) In turn, Peter Rackleff attempted to report the bulldozer stolen. (Tr. 18-20; Def.'s Ex. 4 3.) According to the report filed by Fairfield Police Officer Patrick Mank, Peter Rackleff "was advised that because there was court ordered paperwork allowing [Lambert] to have the bull dozer, that he would need to seek court action against Lucas (the seller) who sold him the bull dozer." (Def.'s Ex. 4 3.)

On July 7, 2015, Peter Rackleff filed a statement of claim in Skowhegan small claims court seeking a judgment of $6,000 against Lambert. The court initially granted default

---

[1] Specifically, Lambert received a "WRIT OF POSSESSION" (form CV-154, Rev. 09/08). This is not to be confused with a "WRIT OF POSSESSION FOR RETURN OF PERSONAL PROPERTY" (form CV-186, Rev. 06/14) issued pursuant to a judgment in an action for the recovery of personal property under 14 M.R.S. § 7071 (2015). Although both parties cite Section 7071 in their briefs, Section 7071 actions for recovery of personal property appear to be under the exclusive primary jurisdiction of the District Court. Section 7071 is therefore not directly applicable to *Lambert v. Nelson* or the writ of possession.

judgment to Peter Rackleff on August 13, 2015, but on March 17, 2016, the court granted Lambert's motion to set aside that judgment.

On May 12, 2016, following a hearing, the court entered a judgment against Lambert in the amount of $6,000 plus court costs. The court also granted Peter Rackleff's motion to add Kimber Lee Rackleff as an additional named plaintiff in the matter. In its ruling, the District Court (*Stanfill, J.*) noted that (1) the civil judgment that Lambert obtained was binding only against Luke and Dylan Nelson; (2) it was unclear whether Lambert had the right to obtain the writ of possession as to the bulldozer; (3) Lambert took the bulldozer under color of law but he did not actually have the right to do so; and (4) Peter Rackleff purchased the bulldozer for $4,500 but "then did some work on it." (Tr. 48-49.)

On June 2, 2016, Lambert filed a notice of appeal of the May 12 judgment.

Lambert filed his brief on July 15, 2016; the Rackleffs filed their brief on August 5, 2016; Lambert filed his reply brief on August 18, 2016.

## II. Arguments of the parties.

The following arguments of the parties are organized by the headings in the argument sections of the parties' respective briefs.

### a. Lambert's Brief.

i. "This Court's Order dated March 30, 2015, found that Mr. Lambert is the lawful owner of the John Deere bulldozer at issue in this case. Acting pursuant to that Order, Mr. Lambert lawfully retrieved the bulldozer from Mr. Rackleff's premises after he obtained a Writ of Possession." (Appellant's Br. 4.)

Lambert quotes 14 M.R.S. § 7071: "[A]fter the judgment is entered, the court shall upon request of the plaintiff issue a writ of possession requiring the sheriff to put the plaintiff into possession of the plaintiff's personal property." (Appellant's Br. 4 (quoting 14 M.R.S. § 7071(6)(2015)).) Lambert argues that he rightfully retrieved the bulldozer pursuant to the writ of possession and notes that the District Court stated in its ruling that it was "not suggesting that it was illegal or anything else" for Lambert to have taken the bulldozer. (Appellant's Br. 4 (quoting Tr. 49).) Lambert adds that "[i]f he was not 'technically' entitled to possession of the bulldozer then the Writ of Possession should not have been issued as that was misleading to Mr. Lambert and to the law enforcement officials that assisted him." (Appellant's Br. 4.)

    ii.   <u>"Mr. Nelson was not the lawful owner of the bulldozer when he sold it to Mr. Rackleff and therefore, the sale was not valid."</u> (Appellant's Br. 5.)

Lambert seems to argue that the Rackleffs did not have title to the bulldozer and that he therefore cannot be liable to them for taking it:

> It is well settled, as a general rule, that one having possession of personal property as a bailee can give no title thereof to a purchaser, although the latter acts in good faith, parts with value, and is without notice of the want of title in his seller. The mere possession of chattels, by whatever means acquired, if there is no other evidence of property, or authority to sell from a true owner, will not enable the possessor to give a good title. So long as the possession of the goods is not accompanied with some indicia of ownership, or of right to sell, the possessor has no more power to divest the owner of his title, or to affect it, than a mere thief.

(Appellant's Br. 5 (quoting *Cadwallader v. Clifton R. Shaw, Inc.*, 127 Me. 172, 179-80, 142 A. 580, 584 (1928) (citing 24 R. C. L. 375-76)).)

"'[O]ne in possession of chattels by theft can convey no title to an innocent purchaser.'" (Appellant's Br. 5 (quoting *Salley v. Terrill*, 95 Me. 553, 555, 50 A. 896, 897 (1901)).)

> Whoever takes the property of another, without his assent express or implied, or without the assent of some one authorized to act in his behalf, takes it, in the eye of the law, tortiously. His possession is not lawful against the true owner. That is unlawful, which is not justified or warranted by law; and of this character may be some acts, which are not attended with any moral turpitude. A party honestly and fairly, and for a valuable consideration, buys goods of one who had stolen them. He acquires no rights under his purchase. The guilty party had no rightful possession against the true owner; and he could convey none to another.

(Appellant's Br. 4-5 (quoting *Galvin v. Bacon*, 11 Me. 28, 30 (1833)).)

Lambert further contends that Peter Rackleff failed to verify that Lucas Nelson owned the bulldozer before Rackleff purchased it, and adds that he (Lambert) "put [Rackleff] on notice" when he called the Rackleffs to notify them that Lucas Nelson had not owned it. (Appellant's Br. 5, 6.)

    iii.   <u>"Plaintiffs' appropriate remedy must be against Mr. Nelson since he is the one who sold the Plaintiffs the bulldozer to which he did not have the title to sell."</u> (Appellant's Br. 6.)

4

Lambert argues that the Rackleffs must look to Lucas Nelson for reimbursement because "Mr. Nelson is the party who has wronged the Rackleffs and the party who has caused them loss." (Appellant's Br. 6-7.) "'The vendor in possession of personal property impliedly warrants the title to the thing sold. He is therefore bound to make good to the purchaser all his losses resulting from the want of a good title.'") (Appellant's Br. 7 (quoting *Thurston v. Spratt*, 52 Me. 202, 204-05 (1863)).)

Lambert likens this case to *Martel v. Bearce*, in which the Law Court affirmed a trial court ruling in favor of the plaintiff, a purchaser of real estate at a sheriff's sale, where title to the real estate in question had already passed from the original owner directly to a third party before the defendant, judgment creditor of the original owner, purported to levy it. (Appellant's Br. 7 (citing *Martel v. Bearce*, 311 A.2d 540 (Me. 1973)).) "'When there has been a complete failure of title in a sheriff's sale, the better rule is that the purchaser is entitled to the return of his money from the judgment creditor.'" (Appellant's Br. 7 (quoting *Martel*, 311 A.2d at 548).)

> iv. "The Plaintiff Mr. Rackleff did not provide sufficient basis for his judgment request of $6,000." (Appellant's Br. 8.)

Lambert also argues that there was insufficient evidence to support the judgment amount of $6,000. (Appellant's Br. 8.) Lambert states that Peter Rackleff "testified that he changed the fluids and filters and had a new seat made for the bulldozer but he was not seeking monetary reimbursement for those things." (Appellant's Br. 8.) Lambert adds, "there was no testimony . . . on the current value [of the bulldozer] and whether its condition and value decreased at the time it was returned to Mr. Lambert." (Appellant's Br. 8.) Lambert also notes that the court incorrectly stated that the Superior Court judgment against the Nelsons stated that the bulldozer was worth $20,000 as opposed to $15,000. (Appellant's Br. 8 (referencing Tr. 49).)

### b. The Rackleffs' brief.

> i. "The Defendant, Mr. Lambert misled this Court in his original Complaint." (Appellees' Br. 3.)

The Rackleffs argue that, "[b]y failing to name Mr. Rackleff as a Defendant [in *Lambert v. Nelson*], Mr. Lambert denied [Rackleff] the right to due process." (Appellees' Br. 3.) In particular, the Rackleffs "believe that they were denied the ability to prove that Mr. Nelson's grandfather did in fact, give the equipment to him" and argue that Peter Rackleff "was not given an opportunity to defend his position as the rightful owner of the bulldozer." (Appellees' Br. 3-4.)

> ii. "Defendant argues that Mr. Lambert received a Court Order which found that he was the lawful owner of the John Deere 450C Bulldozer." (Appellees' Br. 4.)

5

The Rackleffs concede that "a Court Order found Mr. Lambert to be the lawful owner" of the bulldozer, but argue that the judgment "was against Lucas Nelson and Dylan Nelson not Mr. Rackleff." (Appellees' Br. 4.) The Rackleffs also note that "said Court Order provided the Nelsons' [sic] ten (10) days to deliver the equipment and after such time passes and the Defendants fail to return the equipment, then the [sic] Mr. Lambert was awarded a monetary judgment for the value of the equipment . . . ." (Appellees' Br. 4.)

  iii. <u>"Defendant argues that he lawfully retrieved the bulldozer from Mr. Rackleff after securing a Writ of Possession." (Appellees' Br. 4.)</u>

Like Lambert, the Rackleffs quote 14 M.R.S. § 7071:

> When a Writ of Possession has been served on a defendant by a constable or sheriff, the defendant must put the sheriff or constable into possession of the property within 2 days of the date on which the writ is served upon the defendant or the plaintiff may file a motion to have the defendant held in contempt.

(Appellee's Br. 4 (quoting 14 M.R.S. § 7071(7) (2015)).) The Rackleffs note that "Mr. Rackleff was not the Defendant" in *Lambert v. Nelson* and argue that the Court granted the writ of possession to Lambert "based on the claim that the equipment was in the possession of the . . . Nelsons . . . ." (Appellee's Br. 4-5.) The Rackleffs further note that Lambert never served the writ of possession on the Nelsons. (Appellee's Br. 5.)

  iv. <u>"Mr. Lambert argues that Mr. Nelson was not the lawful owner of the bulldozer when he sold." (Appellees' Br. 5.)</u>

The Rackleffs distinguish *Cadwallader v. Clifton R. Shaw, Inc.* and *Galvin v. Bacon* because the defendants in those cases were purchasers, whereas when Lambert brought his suit, he did not include the purchasers (i.e. the Rackleffs) as defendants, "even though he was fully aware that Mr. Rackleff had possession of the bulldozer . . . ." (Appellee's Br. 5.)

The Rackleffs also distinguish Lambert's argument that "one in possession of chattels by theft can convey no title to an innocent purchaser" (*Salley*, 95 Me. at 555, 50 A. at 897) because "[t]his case was a civil matter, the bulldozer was not reported as stolen and therefore this is not a valid argument." (Appellee's Br. 5.)

  v. <u>"Decision by Mr. Rackleff not to sell the bulldozer at auction." (Appellees' Br. 6.)</u>

The Rackleffs note Lambert's apparent insinuation that they chose not to sell the bulldozer because they knew that it was not theirs to sell. They counter that "Mr.

Rackleff's decision not to sell the bulldozer at the auction was based on timing" because there was insufficient time "to complete an investigation or resolve the matter" between Lambert's phone call and the auction. (Appellee's Br. 6.)

### vi. "Appropriate Remedy." (Appellees' Br. 6.)

The Rackleffs counter Lambert's assertion that their only remedy is against the Nelsons. According to the Rackleffs, their purchase of the bulldozer from Lucas Nelson was "a fair deal," and because Lambert failed to name Peter Rackleff as a defendant *Lambert v. Nelson*, "Mr. Rackleff was never given the opportunity to call witnesses to provide testimony that perhaps" Lucas Nelson was in fact the rightful owner of the bulldozer when he sold it to Rackleff. (Appellees' Br. 6.)

The Rackleffs add that "Mr. Nelson is not the individual who misled the Court by stating that he was in possession of the bulldozer when completing the Request for Writ of Possession." (Appellees' Br. 6.)

### vii. "Sufficient Basis for Judgment." (Appellees' Br. 6.)

The Rackleffs seem to argue that the judgment amount is correct because Peter Rackleff (1) purchased the bulldozer for $4,500, (2) "completed some work to it," (3) "purchased it to re-sell at auction for profit," and (4) "was denied that ability." (Appellee's Br. 6.) They concede that the District Court "incorrectly state[d] the amount of $20,0000.00," but they apparently counter that $6,000 is still much lower than the $15,000 that Lambert stated the bulldozer was worth in his lawsuit, and also that the bulldozer must have been in working order because Lambert testified that he started it and put it on a "roll bed" when he retrieved it. (Appellee's Br. 6-7.)

The Rackleffs add, "if Mr. Lambert objected to the value of the bulldozer and/or the amount requested, the correct venue would have been during the Small Claims proceedings." (Appellees' Br. 7.)

### c. Lambert's reply brief.

#### i. "Plaintiffs were not denied the right of due process and their appropriate remedy must be against Mr. Nelson." (Appellant's Reply 1.)

Lambert reiterates that "Mr. Nelson did not have the authority or the consent of Mr. Lambert to sell the bulldozer and therefore his conveyance to Mr. Rackleff was not valid." (Appellant's Reply 1.) He adds that "[i]f the Plaintiffs are disputing whether Mr. Nelson had valid title to the bulldozer then the appropriate remedy would be to file an action against Mr. Nelson, which the Plaintiffs have failed to pursue at this point." (Appellant's Reply 1.)

7

ii. <u>"This Court's prior Order found Mr. Lambert is the lawful owner</u>
<u>of the bulldozer and Mr. Lambert lawfully retrieved the bulldozer</u>
<u>from Mr. Rackleff's premises after he obtained a Writ of Possession</u>
<u>from the Court." (Appellant's Reply 1-2.)</u>

Lambert notes that the Rackleffs "argue that [his] claim of conversion somehow prevents him from seeking the return of the equipment beyond the ten days [set out in his judgment against the Nelsons]." (Appellant's Reply 2.) Lambert disagrees and argues that "[t]he Law Court has explained that 'the gist of conversion is an invasion of a party's possession or right to possession.'" (Appellant's Reply 2 (quoting *Chiappetta v. LeBlond*, 505 A.2d 783, 785 (Me. 1986)).) He also cites *Wyman v. Carrabasset Hardwood Lumber Co.*, 116 A. 729, 731 (Me. 1922) (internal quotations and citations omitted): "It is established as elementary law by well-settled principles, and a long line of decisions, that any distinct act of dominion over property in denial of the owner's right, or inconsistent with it, amounts to conversion.'" (Appellant's Reply 2.)

Lambert explains that he sought the writ of possession after Lucas Nelson failed to return the bulldozer after ten days pursuant to the judgment, and he states that in his request for the writ, he "specified the location of the bulldozer, namely that it was at Somerset County Auction in Fairfield, Maine." (Appellant's Reply 2.) He adds, "even if Mr. Rackleff was included on the Writ of Possession the same result would have occurred. Mr. Lambert would have still lawfully retrieved the bulldozer and Mr. Rackleff would be left with a remedy against Mr. Nelson . . . ." (Appellant's Reply 2.)

iii. <u>"Mr. Nelson was not the lawful owner of the bulldozer and</u>
<u>therefore the sale to Mr. Rackleff was not valid." (Appellant's Reply</u>
<u>3.)</u>

Lambert argues that Peter Rackleff "did not perform due diligence in ensuring that Mr. Nelson had the authority to sell the bulldozer." (Appellant's Reply 3.) Lambert asks this Court to take judicial notice of "Probate Docket No. 2014-310, In re: Clyde V. Lambert" to support his contention that Lucas Nelson never owned the bulldozer. (Appellant's Reply 3 n.1.) Lambert also reiterates that pursuant to *Caldwallader v. Clifton R. Shaw, Inc.*, 127 Me. 172, 142 A. 580 (1928), "mere possession of property is not enough to prove ownership or title." (Appellant's Reply 4.)

Lambert also argues that "although the bulldozer was not reported stolen, Mr. Nelson still did not have authority to sell it." (Appellant's Reply 4.) He notes that when he tried to report the bulldozer stolen "he was informed by law enforcement that it was a civil matter." (Appellant's Reply 4.) Lambert again argues that "[a]s the Law Court stated in Galvin v. Bacon, Mr. Nelson's possession was 'not lawful against the true owner,' which is in this case is Mr. Lambert." (Appellant's Reply 4 (quoting *Galvin v. Bacon*, 11 Me. 28, 30 (1833)).) He also states, "if the Plaintiffs are disputing that Mr.

8

Nelson had the right to sell the bulldozer then they must assert that claim against Mr. Nelson, not Mr. Lambert." (Appellant's Reply 4.)

### iv. "Mr. Rackleff has not sold the bulldozer at auction." (Appellant's Reply 4.)

Here, Lambert simply writes, "Plaintiffs argue that their decision not to sell the bulldozer was based only on timing of events and not the possibility of a fraudulent sale. However, at the small claims hearing Mr. Rackleff testified that he still has not yet sold the bulldozer." (Appellant's Reply 4.)

### v. "Appropriate Remedy." (Appellant's Reply 4.)

Lambert again argues that the Rackleff's "appropriate remedy is to pursue a claim against Mr. Nelson as he is the party who has wronged [them]." (Appellant's Reply 4.)

### vi. "Sufficient Basis for Judgment." (Appellant's Reply 5.)

Lambert argues that he estimated the value of the bulldozer to be $15,000 in his complaint against the Nelsons "based on its condition at the time he lent it to Mr. Nelson during the summer of 2014." (Appellant's Reply 5.) He contends that "[t]here is no evidence as to the present value of the bulldozer, or its value at the time when Mr. Rackleff received it from Mr. Nelson." He again states that "there is insufficient basis to support [the Rackleffs'] claim of $6,000.00." (Appellant's Reply 5.)

## III. Standard of review.

A defendant appealing a Small Claims judgment must choose between two standards of review:

> An appeal by a defendant may be on questions of law only or, on any issue so triable of right, by jury trial de novo at the election of the defendant. (…) Failure to make demand for jury trial with accompanying affidavit or affidavits constitutes a waiver of the right to jury trial de novo. When jury trial has not been demanded, the appeal shall be determined by the Superior Court as provided for plaintiffs' appeals in [M.R.S.C.P. 11(d)(1)].

M.R.S.C.P. 11(d)(2).

When a defendant does not opt to have a jury trial, pursuant to M.R.S.C.P. 11(d)(1), the appeal "shall be on questions of law only and shall be determined by the Superior Court without jury on the record on appeal prepared as provided in [M.R.S.C.P. 11(d)(3)]." Pursuant to M.R.S.C.P. 11(d)(3), "[M.R. Civ. P. 76F] applies to the preparation and transmission to the Superior Court of the record on appeal in small claims actions

9

when jury trial de novo has not been demanded." Pursuant to M.R. Civ. P. 76F(a), "The original papers and exhibits filed in the District Court and a copy of the docket entries prepared by the clerk of the District Court, together with any transcript made pursuant to Rule 76H of these rules, shall constitute the record on appeal in all cases."

Lambert waived his right to a jury trial de novo when he indicated on its Notice of Appeal that he did not request a jury trial de novo and did not include with his Notice of Appeal any supporting statement or affidavit. *See Design Dev., Inc. v. Ferraiolo Constr.*, 522 A.2d 1308 (Me. 1987) (affirming denial of appeal for a jury trial de novo due to insufficiency of affidavits).

Accordingly, this Court will review the Small Claims judgment on questions of law only. This Court "may enter a judgment reversing or affirming, in whole or in part, the judgment appealed from and shall thereupon remand the case to the District Court from which it originated for entry of the appropriate judgment, or for any further proceedings." M.R.S.C.P. 11(f) (2015).

## IV. Analysis.

Lambert argues that the Rackleffs do not have title to the bulldozer because Lucas Nelson did not have title when he sold the bulldozer to Peter Rackleff, as evidenced by the judgment in *Lambert v. Nelson*. The Rackleffs argue that they cannot be bound by the judgment in *Lambert v. Nelson* because they were not afforded the opportunity to defend themselves in that matter. Essentially, Lambert is arguing that collateral estoppel applies and the Rackleffs are arguing that it does not.

Collateral estoppel "'prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.'" *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 17, 989 A.2d 733 (quoting *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 9, 940 A.2d 1097). "In addition, a party asserting nonmutual collateral estoppel—where the parties are not the same parties or privies to the prior proceeding—must establish that the party to be estopped was a party or in privity with a party in the prior proceeding." *Beal*, 2010 ME 20, ¶ 18, 989 A.2d 733. The Rackleffs were not parties to *Lambert v. Nelson*, so the will only be bound by the judgment in that matter if they were in privity with either Lambert or the Nelsons. For purposes of preclusion, "privity is created when two or more persons have a mutual or successive relationship to the same rights of property." *Ne. Harbor Golf Club v. Town of Mount Desert*, 618 A.2d 225, 227 (Me. 1992). The Rackleffs were successors to the Nelsons in their possession of the bulldozer. However, the Restatement (Second) of Judgments, § 44 (1982), states that although "[a] successor in interest of property that is the subject of pending action to which his transferor is a party" may be bound by that action, this rule "has no application to a successor who acquires his interest before the action was commenced

concerning the property." *Id.*, comment f. (*see also Strekal v. Espe*, 114 P.3d 67, 70 (Colo. App. 2004) (res judicata did not bar action by homeowner against transferee where the transfer occurred before the initiation of homeowner's earlier successful lawsuit against transferor); *Clugston v. Moore*, 134 Ariz. 205, 207, 655 P.2d 29, 31 (Ct. App. 1982) (default judgment against transferor/codefendant was not binding on transferee/codefendant where the transfer occurred before the initiation of the suit for specific performance and to quiet title to mobile home and lot).) Here, Lucas Nelson had already transferred the bulldozer to Peter Rackleff when Lambert initiated his suit against the Nelsons, and so the Rackleffs are not estopped by the judgment in *Lambert v. Nelson*.[2]

The Rackleffs also argue that even if Lambert originally had title to the bulldozer, Lambert lost that title ten days after the March 30, 2015 judgment in *Lambert v. Nelson*, at which time the Nelsons were ordered to pay Lambert the full value of the bulldozer in lieu of having returned it. The Rackleffs' argument seems to be based on the principle that when a court finds a person liable for conversion it is essentially ordering that person to buy the converted property from the plaintiff. *See, e.g., Howard v. Deschambeault*, 154 Me. 383, 387, 148 A.2d 706, 708 (1959) (plaintiff in action for conversion of his car presented insufficient evidence for a jury to find defendant liable "and thus to force a sale of his car upon the defendant."). However, this principle does not mean that title will automatically pass to the convertor upon the rendering of the judgment. Rather, "[w]hen the defendant *satisfies* the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale." Restatement (Second) of Torts, § 222A, comment c., (1979) (emphasis added). *See United States v. Mailet*, 294 F. Supp. 761, 767 (D. Mass. 1968) ("an unsatisfied or partially satisfied judgment against one converter does not pass title to him nor bar the original owner from thereafter proceeding against a second converter."); *see also, Lovejoy v. Murray*, 70 U.S. (3 Wall.) 1, 17 (1866) ("nothing short of satisfaction, or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not party to the first judgment."). There is no indication that the unsatisfied money judgment alone precludes Lambert from claiming title superior to the Rackleffs.

---

[2] Interestingly, under the Restatement, even where property was transferred during pending litigation, "if the opposing party knows of the transfer and is aware also that the successor does not know of the pending action" but the opposing party "then fails to notify the successor of the action," the opposing party "may not avail himself of the benefit of the judgment." *Id.*, comment d. Even though Lambert knew about the sale before he initiated the suit, there is no indication that Lambert made any effort to notify the Court that Peter Rackleff was in possession of the bulldozer, or that he made any effort to notify Peter Rackleff about the suit. Therefore, under the Restatement, even if Peter Rackleff had acquired the bulldozer after the initiation of the suit, Lambert should not be able to "avail himself of the benefit of the judgment."

The Rackleffs further argue that Lambert did not properly serve the writ of possession. The evidence confirms that at no point did Lambert, Officer Wilcox, or anyone else attempt to serve the writ on either the Nelsons or the Rackleffs. Lambert testified that he simply presented the writ of possession to a Fairfield police officer who "looked the paperwork over and told [Lambert] to load [the bulldozer] and get it out of there." (Tr. 32.) Lambert's testimony is supported by the incident report filed by Fairfield Police Officer Matt Wilcox. (Def.'s Ex. 2.) According to the report, Lambert "showed [Officer Wilcox] the court paperwork that clearly stated that [Lambert] was awarded a c450 dozer from a Lucas Nelson." (Def.'s Ex. 2 2.) "Lambert stated that Nelson had sold the dozer to a male in Fairfield but it was sitting at the pickers yard on Rt. 201. Once at the Pickers yard Lambert loaded the bull dozer onto a flatbed trailer and hauled it off." (Def.'s Ex. 2 2.) Officer Wilcox "then found that Nelson had sold the dozer to Peter Rackleff" so after Lambert had repossessed the bulldozer, Wilcox "called Rackleff" and "informed [him] as to the contents of the court paperwork and that he would have to get his money back from Nelson through the civil process." (Def.'s Ex. 2 2.)

Lambert seems to counter that he was not required to serve the writ or see to it that the judgment named the correct defendant(s). Again, Lambert's argument is that the judgment in *Lambert v. Nelson* granted him absolute title to the bulldozer and that he cannot rightfully be found liable for retrieving it from anybody, with or without serving the writ. However, as established, *Lambert v. Nelson* does not seem to be binding on the Rackleffs or their claim to the bulldozer. The writ of possession clearly states, "We command you [i.e. Maine sheriffs and sheriff's deputies] that without delay you cause the (plaintiff) Jeffrey Lambert, J & D Truct [sic] Equipment to have possession of [the bulldozer] *as against the (defendant) Luke Nelson & Dylan Nelson*." (Pl.'s Ex. 2 (emphasis added).) The writ does *not* state that Lambert is entitled to possession of the bulldozer against any party other than the defendant(s) in the captioned matter. Basically, there was no procedurally sound way for Lambert to serve the writ of possession on the Rackleffs because they were strangers to it. Therefore, even though Lambert apparently did fail to have the writ served, that fact has no legal significance to the Rackleffs.

As between Lambert and the Rackleffs, there had been no prior adjudication as to the title of the bulldozer at the time that Lambert repossessed it. However, the District Court apparently based its decision only on its (likely correct) finding that the prior litigation did not, of itself, give Lambert the right to repossess the bulldozer from the Rackleffs. It seems that the District Court failed to actually adjudicate who had superior title to the bulldozer at the time that Lambert repossessed it. The Rackleffs argued that they were denied their day in court to claim title to the bulldozer, but the small claims hearing was their day in court; they were claiming title superior to Lambert's.

12

The District Court found that the Nelsons had converted Lambert's bulldozer and then sold it to the Rackleffs, yet the Court also found that Lambert "did deprive Mr. Rackleff of some property." (Tr. 49.) It is unclear whether the District Court found Lambert liable for conversion because the Court apparently awarded damages in the amount that the Rackleffs had invested in the bulldozer (the $4,500 purchase price plus improvements, for a total of $6,000), as opposed to the actual value of the bulldozer. *See Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995) ("The traditional measure of damages in a conversion action is the value of the property at the time of the unlawful conversion."). Of course, the District Court also was not able to award more than $6,000 regardless of the tort because this was a small claims action. 14 M.R.S. § 7482 (2015). In order for the Rackleffs to have properly prevailed on a claim of conversion, they must have shown that their title in the bulldozer was superior to Lambert's. "'(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender.'" *Doughty*, 661 A.2d at 1122 (Me. 1995) (quoting *Chiappetta v. Le Blond*, 505 A.2d 783, 785 (Me. 1986)). There is no indication from the record whether or not the District Court considered these factors in rendering its decision, or if it did not find Lambert liable on a theory of conversion, on what theory it did find Lambert liable instead.

In addition, the District Court may not have considered the principle that a bona fide purchaser of goods for value without notice does not necessarily acquire title to those goods. As Lambert points out, there is Maine case law stating that bona fide purchasers of converted goods generally do *not* gain title. See, e.g., *Bacon v. Penney*, 418 A.2d 1136, 1140 n.3 (Me. 1980) ("The law in Maine is settled that a bona fide purchaser of personal property from one who has acquired the property tortiously, acquires no rights against the true owner, and is liable in conversion to the true owner without notice or demand.").)

## V. Decision and Order:

The Maine Rules of Small Claims Procedure are supposed to be construed "to secure the just, speedy, and inexpensive determination of every action in a simple and informal way." The problem is, many actions filed in small claims court involve issues of law that don't lend themselves to resolution "in a simple and informal way." Moreover, requests for Findings of Fact and Conclusions of Law as well as motions for a new trial are not available to litigants in small claims actions. *Thomas v. BFC Marine/Bath Fuel Co.*, 2004 ME 27. The undersigned specifically finds that this matter was not capable of resolution "in a simple and informal way" and that the District Court Judge did the best that could be expected given the procedural posture of the case presented to the Judge.

13

Based upon the hearing transcript, the undersigned would be inclined to find the following:

1) Lambert loaned several pieces of equipment to his nephew(s).

2) Nephew(s) unbeknownst to Lambert sold one piece of equipment, the bulldozer, to the Rackleffs.

3) Lambert sought and received a default judgment against nephew(s). The proposed Judgment was drafted by Lambert's attorney. The language of the Judgment raises the question of whether Lambert's relief if the bulldozer was not returned to him within 10 days of the date of the Default Judgment was restricted to a money judgment.

4) There was no basis for the Default Judgment to include attorney's fees.

5) No Writ should have been issued given the language of the Default Judgment.

6) The Rackleffs should get their money back from nephew(s).

7) If indeed there is no requirement to title/register this type of equipment in the State of Maine, there should be.

8) Assuming Lambert knew the Rackleffs had his bulldozer at the time he filed suit in CV-14-036, he should have included the Rackleffs in that suit along with nephew(s).

9) Although the nephew(s) are the primary "bad guys" in this matter, both parties to this case are not without responsibility for the present state of affairs.

However, this Court is not supposed to make findings of fact, only reviewing possible errors of law. This Court **can** remand a matter to the District Court "for any further proceedings." Rule 11(f), Maine Rules of Small Claims Procedure. Neither party has shown any interest in bringing before the Court the apparent actual wrongdoers here, Lucas and Dylan Nelson. This Court suspects this is because the Nelsons are considered to be judgment-proof.

In any event, for the undersigned to review the judgment for errors of law the judgment itself needs to be clarified in the following fashion by the trial court addressing the following:

14

a) Was the basis for the judgment a finding by the trial court that Defendant was liable for conversion;

b) If so, did the trial court consider the elements necessary for a finding of conversion to occur as set out in the *Doughty* case mentioned above;

c) If the trial court did not find Defendant liable under a theory of conversion, what basis for liability was utilized;

d) Finally, did the trial court consider the law in *Bacon, supra,* in reaching the factual and legal findings that it did.

Accordingly, this matter is **remanded** back to the District Court for further proceedings consistent with this Order.

The Clerk is directed to incorporate this Decision and Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 11/15/16

BY _____

**Robert E. Mullen, Justice**
**Maine Superior Court**

15